**UNITED STATES of America,**
**Appellant,**

v.

**Sidney NORFLETT,**
**Defendant, Appellee.**

**No. 90–1736.**

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1990.

Decided Dec. 28, 1990.

**51**

Duane J. Deskins, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellant.

James S. Dilday, with whom Grayer, Brown & Dilday was on brief, for defendant, appellee.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge, and
SELYA, Circuit Judge.

SELYA, Circuit Judge.

In this criminal appeal, the government contends that there were no valid grounds for departing below the guideline sentencing range (GSR). We agree that the district court erred and, therefore, vacate the defendant's sentence.

## I

Defendant-appellee Sidney Norflett was indicted for, and convicted at trial of, two counts of bank robbery.[1] This was not Norflett's first brush with the law. He had a criminal record which included (1) participation in the armed robbery of a bank in 1979, (2) use of a firearm in the course of the 1979 heist, and (3) armed robbery of a restaurant in 1982. The presentence investigation report (PSI Report),

to which Norflett did not object, described the counts of conviction in the following manner:

As to Count one, on October 6, 1989, . . . Norflett entered the Boston Five Cent Savings Bank, 1895 Centre Street, West Roxbury, Massachusetts. The defendant approached victim teller Damary Jadin and asked for change. He had his hand in his jacket and the teller thought that he was holding a firearm. When the teller opened her drawer, the defendant demanded [money]. The teller complied with his demand, and the defendant fled from the federally insured bank with $1,811.00.

As to Count two, on September 27, 1989, . . . Norflett entered the Boston Five Cents Savings Bank, 777 South Street, Roslindale, Massachusetts. The defendant approached victim teller Katina Peros and placed a bag on her teller counter. The defendant said he wanted her large bills and that he had a pistol in the bag. The victim teller opened her drawer and gave the defendant money, which he took and he then moved to the next teller window. There the defendant . . . demanded money and [received some]. The robber took the money, turned and fled from the federally insured bank with approximately $2012.00.

The PSI Report concluded that the defendant, by reason of his previous convictions, became a "career offender" when he was found guilty in the present case. *See* 28 U.S.C. § 994(h) (1988) (a defendant is a career offender if, *inter alia*, he is convicted of a crime of violence after having been convicted of two or more felonies which were crimes of violence); *see also* U.S.S.G. § 4B1.1 (Nov.1989) (same). Application of the career offender provision altered the

---

1. The statute of conviction reads in pertinent part:
    Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . .;
    or

    Whoever enters or attempts to enter any bank, . . . with intent to commit in such a bank, . . . any felony affecting such bank . . . in violation of any statute of the United States, or any larceny—
    Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
    18 U.S.C. § 2113(a)(1988).

52

GSR in Norflett's case from 24–30 months to 210–262 months.

The prosecutor requested that sentence be imposed within the GSR. The defendant, albeit conceding that he was correctly classified as a career offender and that, therefore, the GSR bottomed out at 210 months, sought clemency. The district court acquiesced, departing downward and imposing a 72–month term of imprisonment. This appeal followed.[2]

## II

We examine the propriety of a departure from the GSR in accordance with the tripartite test established in *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The first question is whether, taking the reasons for departure stated by the district court at face value, those reasons will, as a matter of law, justify abandonment of the guidelines. *See id.; see also United States v. Harotunian*, 920 F.2d 1040, 1044 (1st Cir.1990). Our review of such a question is plenary.

In this case, the court's reasoning left little to the imagination. The judge said:

I am going to impose a sentence of six years. I think the circumstances of this case for the imposition of anything in excess of that would be I believe disproportionate for the crimes committed. The individual defendant committed two bank robberies with no real violence involved, obtained $3,000 total, and to impose 20 years in a situation like this I would say would constitute a miscarriage of justice. I'm not about to do it. I think six years is a reasonable sentence based on the two crimes for which he stands convicted and on the basis of his

record for which he has already served time.

In his written findings filed pursuant to 18 U.S.C. § 3553(c), the judge drove home the same point, writing that he departed because "210 to 262 months imprisonment is excessive punishment for a defendant who obtained only approximately $3,000.00 as a result of two bank robberies in which there was no threat or violence."

Summarizing, then, the downward departure rested on three bases: (1) the absence of any "threat or violence," (2) the small amount of money stolen, and (3) the "excessive" sentence which would result from adherence to the guidelines. A departure grounded on so porous a foundation cannot stand.

## III

To be most charitable, we can only regard the court's reliance on the absence of any "threat or violence" as an oversight. For one thing, the risk of violence, i.e., "force and violence, or ... intimidation," 18 U.S.C. § 2113(a), was an essential element of the offenses of conviction. *See, e.g., United States v. Davis*, 915 F.2d 132, 133 (4th Cir.1990) (per curiam). For another thing, the record is perfectly clear that a significant threat of violence was present during both of the subject robberies. *See supra* p. 51 (undisputed description of offense behavior).[3]

The only other face we can possibly put on this finding is to say that the court meant somewhat inartfully to refer to the absence of proof that Norflett actually had a firearm in his possession on the occasion of either robbery. But, even such a strained construction would not advance the appellee's cause. *See United States v. Williams*, 891 F.2d 962, 965 (1st Cir.1989)

**2.** Originally, Norflett also filed a protective appeal. He elected not to pursue his appeal, however, and it was dismissed for want of prosecution on October 16, 1990.

**3.** In the West Roxbury robbery, the defendant purposefully gave the appearance that he was holding a firearm. When liberating funds in Roslindale, the defendant told the teller specifically that he had a pistol. Such conduct is more than enough, as a matter of law, to comprise a

"threat of violence" in a section 2113(a) case. *See, e.g., United States v. Harris*, 530 F.2d 576, 579 (4th Cir.1976) (requisite element of offense may be found so long as jury could properly conclude "that the defendant's conduct was reasonably calculated to produce fear"); *see also* U.S.S.G. § 4B1.2, comment. (n. 2) (Nov.1989); *United States v. McVicar*, 907 F.2d 1 (1st Cir. 1990) (discussing analogous question in context of guidelines).

(in prosecution under § 2113(a), the fact that defendant did not brandish, display or possess a gun "could be given no weight in the judge's departure decision"). Either way, there was no justification for departing.

## IV

■ By the same token, the fact that Norflett emerged from the robberies with only a modest haul was, for departure purposes, beside the point. In an earlier case, where the same judge in a case involving the same statute of conviction attempted to depart downward on the same basis, we said: "The simple fact that [the defendant] was not as successful a robber as he might have hoped did not warrant a downward departure." *Williams*, 891 F.2d at 965. We see no reason either to repeat our earlier analysis or to retreat from it.

## V

■ This brings us to the nub of the matter: the question of perceived excessiveness. The district court apparently believed that, notwithstanding the advent of the guidelines and a lengthy string of opinions from this, and other, courts of appeals, it remained free to follow the dictates of conscience whenever, and to the extent that, it thought the GSR incommensurate to the crime. We disagree.

There is no need for exegetic treatment of the matter. We have made the point many times before, in unequivocal terms. Under the Sentencing Reform Act, departures are the exception, not the rule. *Diaz–Villafane*, 874 F.2d at 52. Whether up or down, departures should only be "permitted in those cases where idiosyncratic circumstances warrant individualization of sentence beyond that which is possible within the comparatively close-hewn parameters constructed by the guidelines." *United States v. Aguilar–Pena*, 887 F.2d 347, 349 (1st Cir.1989). That the district court thinks the GSR too harsh in a given

case does not by itself warrant a downward departure. After all:

> Giving judges free rein to forsake the guidelines in cases falling within the heartland for a given offense would be tantamount to judicial repudiation of the Sentencing Reform Act and the important policies which propelled its enactment.

*Id.* at 351. *See also United States v. Studley*, 907 F.2d 254, 260 (1st Cir.1990) ("[r]egardless of how well founded, a belief by the sentencing judge that the punishment set by the [Sentencing] Commission is too severe or that the guidelines are too inflexible may not be judicial grounds for departure"). Particularly in career offender cases, where Congress left the Sentencing Commission precious little room to maneuver, specifically directing the Commission to "assure that the guidelines specify a sentence to a term of imprisonment *at or near the maximum term authorized* for [career offenders]," 28 U.S.C. § 994(h) (emphasis supplied),[4] courts must subrogate personal views to the Congress' sense of how best to achieve uniformity. *See United States v. Gonzalez–Lopez*, 911 F.2d 542, 551 (11th Cir.1990) (in considering a career offender case, "a court cannot depart because it believes a sentence is excessive").

## VI

■ In his brief and at oral argument, Norflett's lawyer suggested another possible basis for departure: defendant's age. While we give him high grades for ingenuity, we find his contention—that the judge "stressed the issue of defendant's age," Appellee's Brief at 3—to be untenable. Our inspection of the sentencing transcript reveals that, at the outset of the proceedings, the judge asked how old Norflett was. Thereafter, the court mentioned defendant's age only in passing in the form of two markedly similar rhetorical questions. One example should suffice:

**4.** The "maximum term authorized" for each offense of conviction in this case was 20 years. *See* 18 U.S.C. § 2113(a). Thus, the Commission, by constructing the guidelines so as to produce

a GSR beginning at 17½ years, was doing nothing more than following Congress' explicit directive.

54

THE COURT [to the prosecutor]: Let me ask you something. Your recommendation for robbing $3,000 is basically ruining this man's entire life. Twenty years, he comes out at 54 for $3,000. Is that reasonable?

The court then went on to make explicit findings, *see supra* p. 52, bereft of any mention of Norflett's age. Taking the record as a whole, and adopting a realistic perspective, we think the fleeting references to Norflett's maturescence constituted less a focus on age as a ground for departing than a subset of the court's overall views about the excessiveness of the indicated punishment.

Furthermore, even if age was an unspoken factor in the court's thinking, "[a]ge is not ordinarily relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.1, p.s. In general, departures require the existence of some "substantial atypicality" sufficient to distinguish the case from the mine-run for the offense of conviction. *See United States v. Sklar*, 920 F.2d 107, 116 (1st Cir.1990); *Williams*, 891 F.2d at 967. There is nothing sufficiently unusual about Norflett's age which makes his situation atypical or which invokes an exception to the general rule expressed in the policy statement. Norflett was 34 when sentenced, healthy, and in the prime of life. On this record, his age could not have comprised a valid ground for sentencing him outside the guidelines.

## VII

We need go no further. This case fell well within the heartland of the career offender provisions. The circumstances relied upon by the court below were makeweights, insufficiently heavy to tip the scales in favor of a sentence below the GSR. Hence, we must sustain the government's appeal.

We do, however, wish to make one thing crystal clear. We recognize that the career offender statute, 28 U.S.C. § 994(h), is strong medicine—but it has been prescribed by Congress and must be swallowed.[5] Neither the statute nor the guidelines which prescind from it can be adulterated by a judge's personal sense of inequity, no matter how well-intentioned the judge may be. Dissatisfaction with the guidelines or with the range of choices they produce in particular cases does not in itself warrant departure, whether up or down.

*The defendant's conviction is affirmed, his sentence vacated, and the cause remanded for resentencing within the applicable guideline range.*

---

5. We leave for another day the question of whether, in view of 28 U.S.C. § 994(h), departures are prohibited in career offender cases. At least two circuits have held that departures are permissible in career offender cases. *See United States v. Lawrence*, 916 F.2d 553, 554–55 (9th Cir.1990); *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990). We do not mean to suggest the contrary. We hold today only that, to the extent departures may be allowable in such cases, they must, at the very least, be premised on the same considerations of meaningful atypicality that apply across the board.