**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

--------------------------
**No. 92-3407**
--------------------------


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee
                    Cross-Appellant,


        versus


SHENNA MADISON,

                    Defendant-Appellant
                    Cross-Appellee.



-------------------------------------------------------
Appeals from the United States District Court
for the Eastern District of Louisiana
-------------------------------------------------------
(April 21, 1993)


Before POLITZ, Chief Judge, DUHE', Circuit Judge, and BELEW[1], District Judge.


BELEW, District Judge:

On April 22, 1992, SHENNA MADISON ("MADISON"), the defendant-appellant and cross-appellee, was sentenced to 180 months in prison and 60 months on supervised release in connection with various offenses arising from her participation in a narcotics trafficking

---

[1] Senior District Judge of the Northern District of Texas, sitting by designation.

operation. She appeals, contending that the evidence was insufficient to support her conviction and that upholding her conviction would result in a manifest miscarriage of justice.

On cross-appeal, the government contends that MADISON's sentence must be vacated since the district court's downward departure from the minimum guideline sentence was based, at least in part, upon patently invalid reasons, namely, MADISON's age, her culpability relative to that of her co-defendant, and that MADISON's criminal history category over-represented the seriousness of her criminal past. Finding that the evidence supports MADISON's conviction and that the reasons given by the district court for departure from the minimum guideline sentence are inadequate, we affirm the conviction and vacate and remand for resentencing within the sentencing guidelines or for articulation of adequate reasons for departure.

## BACKGROUND[2]

On October 2, 1991, agents of the Bureau of Alcohol, Tobacco, and Firearms executed a search warrant at 302 Atlanta Street, in New Orleans Louisiana, an apartment shared by Ernest Allen and MADISON. (R., Vol. 5 at 54; Vol.6 at 113). Agents had probable cause to believe that Ernest Allen, a convicted felon, was in possession of a semi-automatic weapon. (Id. at 115). The warrant was executed as Ernest Allen was getting into his car to go to the hairdresser. As MADISON watched from inside the house, the agents

---

[2] References to the Record on Appeal of this matter are designated herein as (R., Vol. __ at __). The Presentence Investigation Report is referenced to as (PSR at __, par. __).

stopped and interviewed Allen, and then hand-cuffed him. Five to ten minutes after they first detained Allen, the agents knocked on the door. After a brief pause, MADISON, who had no clothes on, opened the door. (R., Vol.6 at 115, 199-200).

Agents searched the house and seized guns, drugs, and laboratory equipment. Specifically, more than seven hundred grams of crack cocaine which had been divided into numerous plastic bags were seized. (R., Vol. 5 at 18-25). A triple-beam scale, a glass beaker, and a box of plastic bags was seized as well as a plastic bag, two glass vials and a spoon, all coated with cocaine residue. (Id. at 27-29, 87). Allen admitted that drugs were scattered "all through the house." In fact, drugs and paraphernalia were found in a closet in the back bedroom. One bag of crack cocaine was recovered from behind a couch in the living room. Other crack was recovered from a kitchen cabinet. (Id. at 97). Additional crack was found in the middle bedroom closet. Still more crack was found beneath the chest of drawers and television set. (Id. at 100-103).

Also found beneath this chest of drawers was $7,900 in cash. (Id. at 102-3, Vol. 6 at 108). The money was found inside a grocery bag along with a peach and a bag of fruit. (Id. at 108-9). Allen testified, however, that he always kept his money in the refrigerator, and that he used the chest of drawers where the money was found exclusively to store his dope. (R., Vol. 5 at 49-50).

Finally, Agents seized a .38 caliber revolver from beneath the mattress in the bedroom. (Id. at 101-2). Allen testified that he used the revolver to protect his drugs and his household, and that

3

he took the gun with him when he went to sell drugs in the Desire Housing Project. (Id. at 45). Allen testified that when he left the house that morning to get his hair done, the .38 revolver was sitting on top of the bedroom dresser. (Id. at 46, 80).

Prior to her arrest, MADISON gave a statement to the agents. She stated that she knew that Allen was dealing drugs, and that she always felt that there were drugs in the house. She also told agents that Allen is into guns and violence. (Id. at 119-20). Agents asked MADISON what her part in the drug dealing was, and MADISON replied that her job was to spend the proceeds of the drug trafficking. (R., Vol. 6 at 122).

MADISON was charged in three counts[3] of a six count indictment. Allen was charged in all six counts and, subsequently, made a plea agreement with the government on the first three counts in exchange for his testimony against MADISON. At her trial, the jury found MADISON guilty on all three counts with which she was charged based on testimony from 11 government witnesses, including Earnest Allen, her co-conspirator.

## ANALYSIS

## A.    Sufficiency of Evidence to Support the Conviction

---

[3]    (1) conspiring to knowingly and intentionally possess cocaine base with the intent to distribute (21 U.S.C. § 846);
(2) knowingly and intentionally possessing approx. 750 grams cocaine base with the intent to distribute (21 U.S.C. § 841(a)(1));
(3) knowingly using and carrying a firearm in connection with a drug trafficking crime (18 U.S.C. § 924(c)(1)).

4

The first matter before the court on appeal is whether the evidence supporting MADISON's convictions was so meager that upholding her conviction would result in a manifest miscarriage of justice. MADISON contends that the incriminating testimony of her co-conspirator, Ernest Allen, was inherently unbelievable on its face since Allen had entered into a plea agreement with the government. The district court disagreed and this Court affirms. See Wilkerson v. United States, 591 F.2d 1046 (5th Cir. 1979), rehearing denied, 595 F.2d 1221 (1979).

In reviewing a verdict challenged on the sufficiency of the evidence, this Court views the evidence, whether direct or circumstantial, and all reasonable inferences drawn from the evidence, in the light most favorable to the jury's verdict. United States v. Pigrum, 922 F.2d 249, 253 (5th Cir.), cert. denied, 111 S.Ct. 2064 (1991). In this light, the Court must determine whether "a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." United States v. Carter, 953 F.2d 1449, 1454 (5th Cir.), cert. denied, 112 S.ct. 2980 (1992). We conclude in this case that the jury could have found, as they did, that the evidence showed beyond a reasonable doubt that MADISON conspired to possess with intent to distribute crack, that she did possess with intent to distribute crack, and that she used and carried a firearm during and in relation to these drug dealing activities.

MADISON testified that she did not know Ernest Allen was

selling drugs. The jury must have disbelieved her claim in light of the evidence that crack cocaine was found all over the house. There was a plate of cocaine in the kitchen. Moreover, the evidence strongly supported the jury's inference that MADISON hid the cash and the .38 revolver after she witnessed the agents arrest Ernest Allen. The drug proceeds were not seized from the refrigerator where Allen had left them, but rather from under his chest of drawers, where only he hid his dope. Moreover, the fruit that was found with the money under the drawers supported the inference that the money had been hurriedly moved from the refrigerator. Similarly, Allen left the .38 revolver on his dresser. But, by the time the agents searched the house, the gun was under the mattress. Madison's actions in hiding the gun and the money, her ongoing presence in the crack-filled apartment, as well as her admission that her job was to spend the drug money suffice to support the jury's guilty verdicts.

It is well-established that plea agreements (such as Ernest Allen's in this case) raise issues of credibility. United States v. Puma, 937 F.2d 151, 155 (5th Cir. 1991), cert. denied, 112 S.Ct. 1165 (1992). However, since credibility issues are issues for the jury, the Court will not invade the province of the jury to weigh the credibility of the witnesses. United States v. Razo-Leora, 961 F.2d 1140, 1145 (5th Cir. 1992); United States v. Causey, 835 F.2d 1527, 1529 (5th Cir. 1988). Clearly, MADISON has not shown that her conviction resulted in a manifest miscarriage of justice or that there was insufficient evidence and, therefore, this Court is

6

of the opinion that her conviction should be affirmed.

## B. Adequacy of Reasons for Downward Departure

The second matter before the court on appeal is a cross-appeal by the UNITED STATES OF AMERICA. The issue raised is whether MADISON's sentence must be vacated where the district court's downward departure from the minimum guidelines sentence was based, at least in part, upon patently invalid reasons, namely, MADISON's age, her culpability relative to that of her co-defendant, and that MADISON's criminal history category over-represented the seriousness of her criminal past. The district court's disposition toward leniency brings into focus whether the court may depart below the statutory minimum of the sentencing range yielded by the guideline calculations. We hold that the court may do so, provided that appropriate and adequate reasons for the departure are assigned. 18 U.S.C. §§ 3553(c), 3742(e), (f). Enunciation of an adequate explanation for departure from the sentencing guidelines range is a threshold requirement mandated by statute.

In the appellate review of sentences, we examine factual findings subject to the clearly erroneous rule, and accord great deference to the trial judge's application of the sentencing guidelines. 18 U.S.C. § 3742(e); United States v. Mejia-Orosco, 867 F.2d 216 (5th Cir.), clarified, 868 F.2d 807, cert. denied, 109 S.Ct. 3257 (1989). We also review the district court's interpretation of the Sentencing Guidelines de novo. United States v. Reyes-Ruiz, 868 F.2d 698, 701 (5th Cir. 1991). Applying these

7

standard, we find error for the following reason:  MADISON should have been sentenced to imprisonment for at least 235 months pursuant to the minimum sentencing guideline or, the district court should have articulated adequate reasons for its downward departure.

Based on a total offense level of 36 and a criminal history category of III, the guideline imprisonment range contained in the PSR was from 235-293 months.[4]  The district court adopted the PSR's findings and conclusions and, at the April 22, 1992 sentencing hearing, stated:

> "Although the guideline calculations presented in the pre-sentence report are correct, the court believes that a downward departure is warranted for the following reasons.
>
> The defendant's criminal history category over-represents the seriousness of the defendant's criminal history.

---

[4]    Prior to the April 22, 1992 sentencing, the probation officer determined the base offense level to be 36 pursuant to U.S.S.G. § 2D1.1(a)(3).  (PSR at 6, par. 9).  No adjustments were recommended by probation and, therefore, the total offense level was 36. (Id.).  In determining MADISON's criminal history category, the probation officer assessed MADISON one criminal history point for her 1990 conviction for credit card fraud. (Id. at 7-8, par. 29).  Two points were assessed for MADISON's 1991 conviction for possession of stolen property and criminal trespass.  (Id. at 8, par. 30).  Two additional points were assessed because MADISON committed her instant offense within two years after being released from confinement on the 1991 conviction.  (Id. at 8, par. 31).  The total of five criminal history points placed MADISON in criminal history category III. One additional conviction, and five different arrests were not applied to her criminal history score.  Accordingly, the minimum guideline sentencing range was determined to be 235 to 293 months, not including the 60 month consecutive sentence mandated by 18 U.S.C. § 924(c)(1).  According to the PSR, there were no aggravating or mitigating factors warranting a departure from the sentencing range.  (Id. at 13, par. 63).
    Neither party objected to the PSR's recommended findings of fact, nor to its conclusions concerning the applicable guideline range.  (R., Vol. 1 at 26).

8

Considering the facts of this case, she is less culpable than her co-defendant, Ernest Allen. A longer period of incarceration would be counterproductive in view of her age."[5]

Based on these reasons, the district court sentenced MADISON to two concurrent terms of 120 months imprisonment as to Counts One and Two, and to a mandatory consecutive term of 60 months imprisonment as to Count Three (Id. at 8-9)[6]; amounting to a downward departure of 115 months below the minimum guideline sentencing range as calculated by the PSR.[7]

## 1. Defendant's Age

One of the district court's stated reasons for departing from the Sentencing Guidelines was that the longer Guidelines sentence "would be counterproductive in view of her age."[8] (R., Vol. 4 at 9). The Sentencing Commission, however, gave "careful consideration to the age of the offender as a mitigating factor in sentencing, [in U.S.S.G. § 5H1.1]." United States v. White, 945 F.2d 100, 102 (5th Cir. 1991). The Commission "has therefore, normally eliminated age as a mitigating sentencing factor." Id. Accordingly, "the circumstance of being young is not a permissible

---

[5]     R., Vol. 4 at 9.

[6]     18 U.S.C. § 924(c)(1).

[7]     Incidentally, Allen was sentenced to 295 months in F.C.I. and 60 months of supervised release.

[8]     In its "Statement of Reasons for Imposing Sentence," the district court apparently abandoned this reason. (R., Vol. 1 at 27). Since this statement was not included in the reasons for sentence entered into the record, we consider it as superfluous verbiage.

consideration under the guidelines." Id. (citing United States v. Summers, 893 F.2d 63, 69 (4th Cir. 1990)). We conclude that this was an invalid justification for a downward departure.

## 2. Relative Culpability of Co-Defendants

The district court also based its "departure" in part on its determination that MADISON was a less culpable offender than Ernest Allen. (R., Vol. 4 at 9, Vol. 1 at 27). Apparently, the district court did not distinguish between the terms "adjustment" and "departure." While both affect the length of a sentence, "adjustments" vary the total offense level whereas "departures" disregard the guideline sentences. Since "departures based on culpability implicate U.S.S.G. § 3B1.2, which provides for an adjustment to the offense level upon a finding of minimal participation," we find that relative culpability is not an appropriate justification for a downward departure. United States v. Sellers, 975 F.2d 149, 151 (5th Cir. 1992) (emphasis in original).[9]

The lower courts should not be allowed to "depart" from the

---

[9] See also United States v. Fields, 906 F.2d 139, 142 (5th Cir.), cert. denied, 111 S.Ct. 200 (1990) (sentencing court properly refused to impose a downward departure on the basis that defendant was a "minor" participant); United States v. Velasquez, 868 F.2d 714, 715 (5th Cir. 1989) (factual assessment of defendant's lesser culpability gives sentencing court the discretion to make a downward adjustment in levels); United States v. Hewin, 877 F.2d 3, 4 (5th Cir. 1989) (U.S.S.G. §§ 3B1.1-3B1.4 allows the sentencing court "to adjust a defendant's offense level, in either direction, to accurately reflect the defendant's culpability in the particular crime").

guidelines for the same reasons that are expressly provided for as "adjustments" in the guidelines, otherwise the goal of uniformed sentencing is defeated. Since the district court did not find that MADISON was a minor or minimal participant within the meaning of §3B1.1 and thereby adjust her offense level, it should not be allowed to depart for that same reason.

### 3. Over-representation of MADISON's Criminal Past

Lastly, we find that the district court erred in finding that MADISON's criminal history category over-represented her criminal past, and incorrectly applied the guidelines in departing pursuant to § 4A1.3 (policy statement).

MADISON already had three felony convictions by the time the jury convicted her in the case. In 1984, she pleaded guilty to theft and received a one year suspended sentence and two years probation. (PSR at 7, par. 28). In 1990, charged with possession of stolen property, credit card fraud, flight from an officer, possession of marijuana, and battery, MADISON pleaded guilty to credit card fraud and was sentenced to time served (PSR at 7, par. 29). In 1991, she was convicted of seventeen counts of possession of stolen property and criminal trespass. She served a four month sentence. (PSR at 8, par. 30).

The 1984 conviction was not counted against MADISON's criminal history score. Also not counted were her five arrests between 1981

and 1990.[10]  Nor did the probation office consider the $10,000 Los Angeles bench warrant outstanding against MADISON at the time of her arrest for the instant offense.[11]

Section 4A1.3 of the Guidelines, a policy statement, permits downward departures when "a defendant's criminal history category significantly over-represents the seriousness" of her criminal history.  As an example of circumstances in which such a departure might be appropriate, the Sentencing Commission suggests "the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."  U.S.S.G. § 4A1.3 (policy statement).

MADISON was clearly an inappropriate candidate for application of § 4A1.3.  The many criminal offenses with which she was charged and of which she was convicted were all of a serious nature. MADISON had exhibited a pattern of criminal activity leading right up to the instant offense.  In fact, she was placed in category III instead of category II because she committed the instant offense within a short period after being released from her most recent prison sentence.  The sentencing court's application of § 4A1.3 to MADISON was clearly the result of an incorrect application of the

---

[10]    She was charged with battery, theft, and other offenses.  The charges were dropped.  (PSR at 8-9, par. 32 -35, 37).

[11]    That warrant stemmed from MADISON's failure to appear for arraignment on charges of grand theft, using a stolen credit card, receiving stolen property, and forgery.  (PSR at 9, par. 36).

12

Sentencing Guidelines.

Having considered the briefs, oral arguments, and pertinent parts of the record, and reviewing assignments of error under controlling standards of review, we find that sufficient evidence supported MADISON's convictions and that no manifest miscarriage of justice resulted. We, therefore, AFFIRM the conviction.

We also find that the district court incorrectly applied the sentencing guidelines by not basing its departure on acceptable reasons. We, therefore, VACATE the sentence and REMAND for resentencing within the Sentencing Guidelines pursuant to Williams v. United States, 112 S.Ct. 1112 (1992), or for elaboration of appropriate and adequate reasons for another downward departure placed on the record.

Affirmed in part and the sentence is vacated and the matter remanded for resentencing.

13