UNITED STATES of America, Appellant,

v.

Michael JACKSON, Defendant, Appellee.

No. 93–1826.

United States Court of Appeals,
First Circuit.

Heard June 9, 1994.

Decided July 19, 1994.

Margaret E. Curran, Asst. U.S. Atty., with whom Edwin J. Gale, U.S. Atty., and Gerard B. Sullivan, Asst. U.S. Atty., were on brief, for U.S.

Before SELYA and CYR, Circuit Judges, and PETTINE,* Senior District Judge.

* Of the District of Rhode Island, sitting by desig-

SELYA, Circuit Judge.

We chronicle today one more vignette that forms part of "the seemingly endless line of criminal appeals marching stolidly to the beat of the federal sentencing guidelines." *United States v. Ocasio–Rivera,* 991 F.2d 1, 2 (1st Cir.1993). Concluding, as we do, that the circumstances relied upon by the court below are insufficient to warrant a downward departure from the guideline sentencing range (GSR), we vacate the sentence previously imposed on defendant-appellee Michael Jackson and remand for sentencing.

## I. BACKGROUND

On April 19, 1993, a jury convicted appellee of possessing cocaine with intent to distribute the drug, 21 U.S.C. § 841(a)(1) (1988); being a felon in possession of a firearm, 18 U.S.C. §§ 922(g) (1988); and using a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c) (1992). Since, these convictions formed the tail end of an extensive criminal record that included convictions for several crimes of violence, appellant qualified for enhancement of his sentence under 18 U.S.C. § 924(e) (1988).

At the disposition hearing, the district court found appellee to be an armed career criminal within the meaning of U.S.S.G. § 4B1.4(a) (Nov. 1992) (instructing that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)" is to be so regarded). Factoring in appellee's status as an armed career criminal and making other standard adjustments, the court calculated the GSR to be 262–327 months (offense level 34, criminal history category VI). In addition, the court determined that appellee qualified for a mandatory 5–year sentence anent the use of a firearm during and in relation to a drug trafficking crime—a sentence which, by law, had to be tacked onto whatever sentence the court imposed with respect to the Jackson's conviction under 21 U.S.C. § 841(a)(1). *See* 18 U.S.C. § 924(c). In short, the guidelines, departures aside, forecast a minimum prison term of 27 years.

nation.

But the district court did not stay within the GSR. Instead, it spontaneously departed, sentencing appellee to an aggregate 20-year prison term (a total of 15 years on the drug trafficking and felon-in-possession counts, as enhanced pursuant to 18 U.S.C. § 924(e), plus a 5-year consecutive sentence pursuant to 18 U.S.C. § 924(c)). The court premised the downward departure on the rationale that an incarcerative sentence within the parameters set by the GSR would be tantamount to "a life sentence" for, the court said, in view of Jackson's age (40), it would be "unlikely" that he would "ever see any light outside of prison." The court added:

> I just happen to think that this is not the kind of thing the sentencing commission may have had in mind. . . . It seems to me that this is one of those circumstances where what [the defendant] did was terribly wrong but not so wrong that a life sentence is appropriate. . . . I am going to depart out of a concern for the system of justice.

The government now appeals.[1] It argues that the sentencing court's stated reasons are legally insufficient to warrant a downward departure. We agree.

## II. DEPARTURES FROM THE GUIDELINES

The basic theory behind the sentencing guidelines is that, in the ordinary case, the judge will apply the guidelines, make such interim adjustments as the facts suggest, compute a sentencing range, and then impose a sentence within that range. *See* 18 U.S.C. § 3553(a), (b) (1988); *see also United States v. Rivera,* 994 F.2d 942, 946 (1st Cir.1993); *United States v. Diaz–Villafane,* 874 F.2d 43, 47–48 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

■ Departures are the exception, not the rule. *See Diaz–Villafane,* 874 F.2d at 52. Thus, it is only in the extraordinary case—

the case that falls outside the heartland for the offense of conviction—that the district court may abandon the guideline sentencing range and impose a sentence different from the sentence indicated by mechanical application of the guidelines. *See Rivera,* 994 F.2d at 947–48. One relatively common basis for departure arises when the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0 (implementing statute); *see generally Rivera,* 994 F.2d at 946; *Diaz–Villafane,* 874 F.2d at 49.[2]

■ It is clear that the guidelines are intended to alleviate disparity in sentencing and to make it reasonably likely that similarly situated offenders will receive comparable punishments, regardless of where they are prosecuted or which judge presides at sentencing. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 38, 51, 161 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221, 3234, 3344 (explaining need for sentencing guidelines "[in] order to lessen the degree to which different judges impose[ ] different sentences in comparable cases"); Charles J. Ogletree, Jr., *The Death of Discretion? Reflecting on the Federal Sentencing Guidelines,* 101 Harv.L.Rev. 1938, 1944 (1988) (noting that sentencing reform came about largely in response to "frequent criticism of the broad discretion afforded federal judges in sentencing [which] led to disparate treatment for similarly situated individuals"); *see also Rivera,* 994 F.2d at 946; *United States v. Aguilar–Pena,* 887 F.2d 347, 352 (1st Cir.1989). Ensuring uniformity inevitably means restricting judicial discretion, for, as we have stated, "[g]iving judges free rein to forsake the guidelines in cases falling within the heartland for a given offense would be tantamount to judicial repudiation

---

**1.** Despite due notice, appellee has neither filed a brief nor applied for the appointment of counsel on appeal. Hence, only the government presented oral argument. *See* Fed.R.App.P. 31(c); 1st Cir.R. 45.

**2.** The other mainstay of departure jurisprudence involves the defendant's "substantial assistance"

to the government. *See* 18 U.S.C. § 3553(e) (1988); 28 U.S.C. § 994(n) (1988); *see also* U.S.S.G. § 5K1.1 (implementing statute); *see generally United States v. Mariano,* 983 F.2d 1150, 1155–57 (1st Cir.1993). This appeal does not require us to delve into the intricacies of substantial assistance.

of the Sentencing Reform Act and the important policies which propelled its enactment." *Aguilar–Pena,* 887 F.2d at 352. Consequently, while the power to depart offers judges a modicum of flexibility in criminal sentencing, this power can only be exercised for reasons that the guidelines themselves endorse.

■■■ In reviewing the legitimacy of departures from the guidelines, appellate courts are expected to engage in a tripartite analysis. *See Rivera,* 994 F.2d at 950–52; *Aguilar–Pena,* 887 F.2d at 350; *Diaz–Villafane,* 874 F.2d at 49. The first step requires an evaluation of the circumstances relied on by the lower court in determining that the case is sufficiently "unusual" to warrant a departure. *Aguilar–Pena,* 887 F.2d at 350. That question is one of law, evoking plenary appellate review shorn of deference to the court below.[3] *See Diaz–Villafane,* 874 F.2d at 49.

To guide judicial consideration of departures at this stage, we have suggested that a sentencing court should analyze a case along the following lines:

> (1) What features of the case, potentially, take it outside the Guidelines' "heartland" and make it a special, or unusual case? (2) Has the Commission forbidden departures based on those features? (3) If not, has the Commission encouraged departures based on those features? (4) If not, has the Commission discouraged departures based on those features?

*Rivera,* 994 F.2d at 949. If the case is not "special" or "unusual"—a condition which, for simplicity's sake, we shall call "atypical"— then the court may not depart under section 5K2.0. If the case is atypical, that is, if it falls outside the heartland for the offense of conviction, the court must then focus on the nature of the atypicality and its place in the departure hierarchy. If the case is atypical only because of the presence of a feature that comprises a "forbidden" ground, the sentencing court may not depart. If the atypicality

stems from an "encouraged" ground, the court may (and most likely will) depart. If the atypicality consists of a ground for departure that is neither "forbidden" nor "encouraged," but is simply "discouraged," then the court must take a long, hard look to determine whether the case differs significantly from the ordinary case in which the particular atypicality is present. *See Rivera,* 994 F.2d at 949.

### III. ANALYSIS

Here, the primary factors relied on by the district court are the defendant's age and the length of the sentence dictated by the guidelines. Neither ground justifies a downward departure.

#### A. *Age.*

■■■ Age is among the various specific offender characteristics that the guidelines treat as "discouraged" for purposes of a departure. In other words, age is a factor "not ordinarily relevant" to the departure calculus. U.S.S.G. § 5H1.1, p.s.; *accord Rivera,* 994 F.2d at 948; *United States v. Norflett,* 922 F.2d 50, 54 (1st Cir.1990); *see also United States v. Jones,* 18 F.3d 1145, 1149–50 (4th Cir.1994) (explaining that the Sentencing Commission adequately considered age in formulating the sentencing guidelines). And Jackson's age—40—is surely not sufficiently "special" or "unusual" to ferry the case outside the heartland for the offenses of conviction.

■■■ Moreover, precedent teaches that the interrelationship between Jackson's age and the length of the prospective sentence does not furnish an adequate legal reason upon which to ground a departure. For example, in *United States v. Doe,* 921 F.2d 340 (1st Cir.1990), we rejected virtually the same proposition on closely comparable facts. There, the district court declined to depart downward and, instead, imposed a 30–year sentence on a 54–year–old man. On appeal, the defendant asserted that the district court

---

**3.** For present purposes, we need not progress past the initial step. In the interest of completeness, however, we note that, if the stated circumstances pass muster, the next step requires a reviewing court to determine whether those cir-

cumstances are adequately documented in the record. *See Aguilar–Pena,* 887 F.2d at 350. Finally, the court must gauge the departure's reasonableness. *See id.*

erred, *inter alia*, by "fail[ing] to consider whether a 'life sentence' is appropriate punishment for th[e] crime." *Id.* at 347. We found no merit to this assertion. *See id.* By like token, in *Norflett*, 922 F.2d at 54, we held that there was nothing sufficiently unusual about a 34–year–old defendant facing a sentence of approximately 17 years as to authorize a downward departure. Our sister circuits regularly have ruled to like effect. *See, e.g., United States v. Goff*, 20 F.3d 918, 921 (8th Cir.1994) (remarking that the court has consistently denied departures to healthy offenders in the age group of a 67–year–old defendant); *United States v. Madison*, 990 F.2d 178, 183 (5th Cir.) (explaining that age has been virtually eliminated as a mitigating sentencing factor), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 339, 126 L.Ed.2d 305 (1993); *United States v. Anders*, 956 F.2d 907, 912 (9th Cir.1992) (rejecting age-based ground for departure in a case involving a 46–year–old offender), *cert. denied*, —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 158 (1993); *United States v. Daiagi*, 892 F.2d 31, 33–34 (4th Cir.1989) (acknowledging that age has been largely eliminated as a mitigating factor); *cf. United States v. White*, 945 F.2d 100, 101–02 (5th Cir.1991) (holding that youthfulness *per se* is not a sufficient reason for a downward departure).[4]

In sum, the departure that the lower court essayed cannot be salvaged on the basis of either the defendant's age or the interrelationship between the defendant's age and the anticipated length of his sentence.

### B. *Excessiveness.*

We now come to the crux of the district court's reasoning: its apparent dissatisfaction with the severity of sentencing options available within the GSR. The judge concluded that, given appellant's age, a 27–year aggregate sentence would be the functional equivalent of life imprisonment and, therefore, too harsh to fit the crime. These con-

clusions led the judge, to use his own words, to "depart out of a concern for the system of justice." Though we appreciate the judge's humanitarian instincts, and do not doubt his sincerity, we regard the stated basis for departure as forbidden.

█ It is firmly settled that, absent specific circumstances independently justifying a departure, a judge cannot sentence outside a properly computed sentencing range merely because he believes that the guidelines work too severe a sanction in a particular case.[5] *See Norflett*, 922 F.2d at 53 ("That the district court thinks the GSR too harsh in a given case does not by itself warrant a downward departure."); *United States v. Studley*, 907 F.2d 254, 260 (1st Cir.1990) ("Regardless of how well founded, a belief by the sentencing judge that the punishment set by the [Sentencing] Commission is too severe or that the guidelines are too inflexible may not be judicial grounds for departure."); *Aguilar–Pena*, 887 F.2d at 353 ("Judicial dissatisfaction alone, no matter how steeped in real-world wisdom, cannot be enough to trigger departures, lest the entire system crumble.").

*Norflett* closely parallels the situation at hand. There, in a case involving a career offender, the sentencing court departed downward because it thought that sentencing the defendant within the GSR would "constitute a miscarriage of justice." *Norflett*, 922 F.2d at 52. We reversed, holding that perceived excessiveness is not a viable basis for a downward departure. *See id.* at 53. In the process, we cautioned that, under the sentencing guidelines, judges are no longer free to act upon their own views whenever they think that "the GSR [is] incommensurate to the crime." *Id.* To the contrary, judges "must subrogate personal views [about what sentences are too severe or too lenient] to the Congress' sense of how best to achieve uniformity." *Id.*

4. To be sure, the guidelines permit consideration of the age of a mature defendant as a ground for departure "when the offender is elderly *and* infirm...." U.S.S.G. § 5H1.1 (emphasis in original). But Jackson is not elderly—and the district court received no evidence of any cognizable infirmity.

5. By the same token, a judge is equally powerless to depart solely because he believes that the guidelines provide insufficient punishment. *See United States v. Cox*, 921 F.2d 772, 774 (8th Cir.1990).

■ This monition has particular force in career offender and armed career criminal cases, for Congress has very specifically directed the Sentencing Commission to ensure that the guidelines provide for severe incarcerative sentences in such cases. *See* 28 U.S.C. § 994(h) (1988) (directing courts in career offender cases to impose sentences "at or near the maximum term authorized [by law]"); 18 U.S.C. § 924(e) (directing courts in armed career criminal cases to impose a minimum sentence of imprisonment for fifteen years without the possibility of suspension, probation or parole). Such policy choices are for Congress, not the courts, to make. And when, as now, the legislative trumpet sounds clearly, courts are duty bound to honor the clarion call. *See Norflett,* 922 F.2d at 53; *United States v. Williams,* 891 F.2d 962, 964 (1st Cir.1989); *see also United States v. Gonzalez–Lopez,* 911 F.2d 542, 551 (11th Cir.1990) (in considering a career offender case, "a court cannot depart because it believes a sentence is excessive"), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991). While we are not without empathy for our concurring brother's views, we are also mindful that the courts' role "is as interpreters of the words chosen by Congress, not as policymakers or enlargers of congressional intent." *United States v. Gibbens,* 25 F.3d 28, 33 (1st Cir.1994). So, too, the courts' role vis-a-vis the Sentencing Commission, so long as the Commission acts within the scope of its statutory authorization.

## IV. CONCLUSION

We need go no further. The short of it is that, in the instant case, neither the defendant's age, the prospective duration of his immurement, nor any combination of these factors are "mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). It follows inexorably that the circumstances relied upon by the district court are inadequate to support a downward departure. Consequently, the defendant's sentence must be vacated. The district court, on remand, shall hold a new sentencing hearing, at which it remains free to consider departure for other, legally adequate reasons (if any are shown). *See United States v. Limberopoulos,* 26 F.3d 245, 247, 251 (1st Cir.1994).

*Vacated and remanded for resentencing.*

PETTINE, Senior District Judge, concurring.

The demands and strictures of the United States Sentencing Guidelines ("the guidelines"), and the limits that the guidelines place upon federal district court judges, constrain me to write a separate opinion in this case. I find the logic of Judge Selya's able opinion to be unassailable, and I must agree with him that "absent specific circumstances independently justifying a departure, a judge cannot sentence outside a properly computed sentencing range merely because he believes that the guidelines work too severe a sanction in a particular case." Maj. op. at 203–204. Although I cannot argue with my colleague's analysis of what the guidelines require, I find myself taking great exception to the mechanical sentencing that the guidelines force upon judges, and I find it painful to adhere to this impersonal and cold-blooded process.

In this case, the district court spontaneously departed downward based on the belief that, for this forty year old defendant, the twenty-seven year sentence required under the guideline range was tantamount to a life sentence. At the Sentencing Hearing, the court articulated its belief that "I just happen to think that this is not the kind of thing the sentencing commission may have had in mind." Tr., 6/25/93 at 34. However, a review of the case law has revealed no precedent teaching that the combination of age and a lengthy sentence, resulting in a de facto life sentence, supports a downward departure. As Judge Selya points out, the guidelines treat age as a discouraged offender characteristic for purposes of a downward departure, and the interrelationship between age and length of sentence has not been considered adequate justification for a downward departure. Furthermore, I have been unable to find any statutory language or

legislative history that indicates that Congress or the United States Sentencing Guidelines Commission ("the Commission") has ever considered this problem. Indeed, given the frequency with which the guidelines result in sentences of numerous decades, combined with the fact that forty year old defendants are not uncommon, logic would seem to dictate that the members of the Commission were unconcerned about de facto life sentences. In any case, given the dearth of documentation as to the state of mind of the Commissioners, the only conclusion that I can reasonably reach is that it is impossible to determine what, if anything, the Commission intended with regard to this issue.

Thus, I must reluctantly conclude that there is no way for me to dissent from the majority opinion in this case and still remain faithful to the ideal of intellectual honesty, an ideal which must always be controlling in any judicial opinion and which I have always treasured. Legal precedent that supports Judge Boyle's downward departure is simply nonexistent. However, my careful and painstaking reflection over the consequences of the proper application of the guidelines in this case, as well as my many experiences with the guidelines in the years since their enactment, leave me overwhelmingly convinced that, except for increased uniformity of sentences, the sentencing guidelines are a failed experiment.

With regard to the results of the application of the guidelines in this case, I wholeheartedly subscribe to Judge Boyle's sentiment that a term of years amounting to a de facto life sentence reaches beyond that which is appropriate for crimes committed by the defendant in the instant case. As a like-minded judge articulated in a factually similar case, "The majority decision ignores what is truly obvious—that the portion of a sentence which goes beyond the defendant's lifespan can serve no retributive, deterrent, rehabilitative or any other proper function of a prison sentence." *United States v. Thornbrugh,* 7 F.3d 1471, 1475 (10th Cir.1993) (Bright, J., dissenting).

As far as the guidelines in general are concerned, I believe that their greatest weakness lies in their mechanical nature. "A system that fails to consider the offender's personal characteristics places too great an emphasis on the harm caused by the offender's act and too little emphasis on circumstances that would serve to mitigate the punishment. The Commission should have realized that it is a *person* who stands before the bar to accept the punishment imposed by the court." Charles J. Ogletree, Jr., *The Death of Discretion? Reflecting on the Federal Sentencing Guidelines,* 101 Harv.L.Rev. 1938, 1953 (1988).

Unfortunately, when trial judges depart from the guidelines, appellate courts are fettered in their review of the litigation. As in this case, they have little or no choice but to react to such departure in a rigid fashion. In distinction to one commentator, I feel they are "[*unable* ] to balance the distant guidance of a bureaucracy against the detailed responsibility of the individual sentencer." Daniel J. Freed, *Federal Sentencing in the Wake of the Guidelines: Unacceptable Limits on the Discretion of Sentences,* 101 Yale L.J. 1681, 1730 (1992). Furthermore, I find the authority given by the guidelines to United States Attorneys, enabling them to control the sentencing process, to be entirely inappropriate and an invasion of the historical role of judges as the final arbiters of justice. Incredibly, we now have the inflexible prosecutorial mind which, all too often, caters to public passion, dictating sentencing parameters. "Discretionary decisions of Assistant U.S. Attorneys, both as to charges and as to factual allegations, can powerfully expand or limit the judge's ambit for sentencing." *Id.* at 1723.

I have struggled with this case and feel compelled to voice my feelings. My sense of justice and my twenty-eight years of experience as a district court judge sitting in criminal cases, preceded by five years as U.S. Attorney and thirteen years as a state prosecutor, all lead me to believe that Judge Boyle's actions in this case were absolutely correct. Judge Boyle acted as a judge, drawing upon his life experience and his judicial experiences, making his decision not simply by working the grid provided by the guidelines, but by balancing the impact of the law upon an individual human being, given

that human being's particularized circumstances, against the protection of society. He recognized the face behind the law. He declined to function merely as an automaton.

The mandates of the guidelines may have accomplished uniformity of sentencing but they have done so by tragically eroding the sacred function of a judge in the sentencing process. This sacred function is a most complex, difficult, nebulous and at times undefinable burden, and it must always be met in the context of the unique setting at hand.

In considering this case, I have very seriously thought about recusing myself from all future criminal cases. I have found this decision an excruciatingly difficult one to make, but I have chosen to continue to hear criminal cases. It is established that a judge's view on the subject matter of litigation does not require recusal. *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). The very nature of my criticism and reaction to this case is abundant recognition of my duty to follow the rules where there is no room for intellectually honest dissent. Furthermore, I believe passage of the pending Violent Crime Control and Law Enforcement Act of 1993 may seriously increase this court's criminal caseload. When I took senior status twelve years ago at age seventy, I solemnly declared that I would carry a full caseload. When the time comes that I can no longer do so as vigorously and effectively as my younger esteemed colleagues, I will at that point end my judicial service. Thus, because my recusal would significantly burden my colleagues, and because I recognize the controlling nature of the guidelines even while I object to their substance, I choose to maintain a criminal docket.

With the foregoing statement, I offer no dissent to Judge Selya's well written opinion.