**UNITED STATES, Appellee,**

v.

**Keith James PARKINSON,
Defendant–Appellant.**

**No. 94–1229.**

United States Court of Appeals,
First Circuit.

Heard Aug. 3, 1994.
Decided Dec. 29, 1994.

Christopher W. Dilworth, by Appointment of the Court, Falmouth, ME, for appellant.

Michael M. DuBose, Asst. U.S. Atty., with whom Jay P. McCloskey, U.S. Atty., Paula D. Silsby and Margaret D. McGaughey, Asst. U.S. Attys., Portland, ME, were on brief, for appellee.

Before CYR and STAHL, Circuit Judges, and ZOBEL,* District Judge.

ZOBEL, District Judge.

Keith Parkinson once again appeals his sentence. After a one-day jury trial, defendant was convicted of robbing a bank in Portland, Maine, in violation of 18 U.S.C. § 2113(a) (1991). He subsequently was sentenced to a term of imprisonment of 240

* Of the District of Massachusetts, sitting by desig- nation.

months, to run consecutively to the remainder of a ten-to-twenty year sentence imposed by a Massachusetts state court for the robbery of a bank in Boston, Massachusetts. On appeal, we affirmed the conviction, but vacated the sentence because the district court had not followed the directive of § 5G1.3(c) of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") when it imposed an entirely consecutive federal sentence. *United States v. Parkinson*, No. 91–2233, 991 F.2d 786, 1993 WL 89801, at *6 (1st Cir. Mar. 30, 1993). After remand, the district court again sentenced defendant to a period of incarceration of 240 months, now to be served concurrently with the remainder of his state sentence.[1] At the time of the resentencing defendant had served either forty-six or forty-eight months of that Massachusetts sentence.[2] He now argues that the sentence, by not taking account of the state time already served, represents an upward departure from the applicable guideline range of 210 to 262 months, which on the facts of this case, he says, was improper.[3]

The parties disagree as to the issues on appeal. Defendant, ignoring the first part of the district judge's exegesis, presumes that the judge departed upwardly, and suggests that the issue before us is whether such departure was justified. The government presents a more complete, and in our view correct, statement of the issues; namely, is time served in state custody before the imposition of the federal sentence included in the calculus under § 5G1.3(c) when deciding whether the sentence is outside the applicable guideline range; and, only if so, was an upward departure in the instant case appropriate. Because we answer the former inquiry in the negative, we need not reach the latter. Nonetheless, a review of the record shows that an upward departure would be appropriate.

1. At resentencing, the court, without dissent from either party, applied the 1993 Sentencing Guidelines. We do likewise.

2. Defendant had served forty-eight months from the date of his arrest on the state charge and forty-six months from the date of sentencing on that offense.

## Standard of Review

We consider *de novo* the legal meaning and scope of § 5G1.3(c) (Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment). *See United States v. Thompson*, 32 F.3d 1, 4 (1st Cir.1994). The district court's fact-finding, however, we review for clear error, with due deference given its application of § 5G1.3(c) to the facts of the case. *See United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992).

## Was there a departure?

A perusal of § 5G1.3 leads us to conclude that in order to determine whether a sentence imposed pursuant to § 5G1.3(c) represents a departure from the guidelines, we do not consider time served in state custody. To hold otherwise would equate "sentence" with "total punishment" and leave meaningless much of the language of § 5G1.3, which we are bound to follow. Like the policy statements, the commentary to the Sentencing Guidelines is binding when it "interprets or explains a guideline ... unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, — U.S. —, —, —, 113 S.Ct. 1913, 1915, 1918, 123 L.Ed.2d 598 (1993). Similarly, even " '[p]ortions of [the Guidelines Manual] not labeled as guidelines or commentary ... are to be construed as commentary and thus have the force of policy statements.' " *Id.* at —, 113 S.Ct. at 1918 (quoting U.S.S.G. § 1B1.7, comment.).

Section 5G1.3 is designed to achieve an incremental punishment for a defendant who, at the time of sentencing for the instant offense, is subject to an undischarged term of imprisonment. U.S.S.G. § 5G1.3. Although there is discretion as to how to accomplish

3. This range represents, coincidentally, both what the total punishment would have been, in accordance with § 5G1.2, had defendant been sentenced on the federal and state bank robbery convictions at the same time in federal court as well as the punishment for the single federal conviction. Both calculations are based upon a criminal history category of VI and total offense level of 32. Defendant does not dispute either.

the incremental punishment, in fashioning an appropriate sentence, the district court is constrained by the Sentencing Guidelines. U.S.S.G. § 5G1.3, comment. n. 3; 28 U.S.C.A. § 994(a) (West 1993). The court should use the following method to reach the sentence: (1) compute the total offense level for the instant offense and defendant's criminal history category; (2) determine the resulting guideline range for that offense; and (3) choose the point within the guideline range that effects a reasonable incremental punishment and decide whether that sentence will run concurrently or consecutively. *See United States v. Jackson,* 30 F.3d 199, 201 (1st Cir.1994) (citing 18 U.S.C. § 3553(a), (b) (1988)); U.S.S.G. § 5G1.3, comment. n. 3.

The commentary to § 5G1.3 instructs that, to compute such an incremental punishment, a sentencing judge should consider the guideline grouping rules of § 5G1.2 (Sentencing on Multiple Counts of Conviction) which defines the total punishment that the defendant would have received had he been simultaneously sentenced in federal court for both offenses. U.S.S.G. § 5G1.3; *Parkinson,* 1993 WL 89801, at *4. Under § 5G1.2, an offense level and criminal history category for the combined offenses establish a guideline range, from which the total punishment is derived. U.S.S.G. § 5G1.2, comment. Often, by discounting the total punishment for time already served on the undischarged sentence, the sentencing judge can attain an incremental punishment. U.S.S.G. § 5G1.3.

Confusion in this case arises from two unusual circumstances. First, the statutory maximum for the offense of conviction is well below the upper end of the guideline range. Second, because of defendant's extensive criminal record (23 criminal history points; 10 above the maximum, category VI), the § 5G1.2 calculation results in the same guideline range as that arrived at pursuant to § 2B3.1 for the instant bank robbery offense. In most cases, the latter would be less than the former and the total punishment would not exceed the hypothetical range for the combined offenses. Nevertheless, the Sentencing Commission carefully distinguished a "sentence for the instant offense" from the "total punishment." *See generally* U.S.S.G. § 5G1.3. Therefore, when determining whether the sentencing judge departed from the guideline range, we look at the sentence imposed for the instant offense, not the total punishment. This is appropriate even were the total punishment beyond the range calculated under § 5G1.2, because that section is a guide, not a mandate. *See* § 5G1.3, comment. n. 3 (instructing court to "consider" § 5G1.2 "to the extent practicable").

The trial court correctly looked to the guideline for the offense of conviction, § 2B3.1, and found that Parkinson had an offense level of 32 and, as a career offender, a criminal history category of VI. *See* U.S.S.G. § 5G1.3, comment, n. 3(D) (illustrating that, absent departure, sentence must fall within the guideline range for the instant offense). Although this combination would ordinarily yield a guideline range of 210 to 262 months, as noted above, the statutory cap on the offense of conviction here was 240 months. 18 U.S.C.A. § 2113(a) (West 1994). Thus, the imposed 240–month sentence, to be served concurrently with the undischarged portion of Parkinson's ten-to-twenty year state sentence, was not a departure from the guideline range for the instant offense.

*Would a departure have been justified?*

■ Although we hold that the sentence was within the guideline range, a departure in this case would be warranted in any event. This Court reviews the sentencing court's decision to depart using a three-step inquiry: first, are the circumstances of the case sufficiently unusual to justify departure, *United States v. Quiñones,* 26 F.3d 213, 217 (1st Cir.1994); second, do the relied-upon factual circumstances actually exist, *United States v. Rivera,* 994 F.2d 942, 950 (1st Cir.1993); and third, is the departure reasonable, *Jackson,* 30 F.3d at 202 n. 3. *See generally United States v. Diaz–Villafañe,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Because defendant does not challenge the reasonableness of the departure, we discuss only the first two steps below. Our review of the district court's conclusion that the case was sufficiently unusual to warrant departure is plenary, but we will set aside that court's determination that the relied-upon facts actually exist only if they are clearly erroneous. *Diaz–Villafañe,* 874 F.2d at 49.

▮ The sentencing judge in an abundance of caution articulated his reasons for departing under the authority of § 4A1.3. That section permits an upward departure when a defendant's criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that [he] will commit other crimes...." *United States v. Fahm,* 13 F.3d 447, 449 (1st Cir.1994) (quoting U.S.S.G. § 4A1.3 (policy statement)). Thirteen or more criminal history points place a defendant in criminal history category VI; according to the presentence·report, Parkinson had accumulated twenty-three. Given the notable difference between the criterion for category VI and defendant's score, the upward departure rests on solid legal ground. *See United States v. Brown,* 899 F.2d 94, 97 (1st Cir.1990) (upward departure from criminal history category VI justified by defendant's twenty criminal history points). Further, strong evidence exists that, given the opportunity, defendant will continue to engage in criminal activity. The two bank robberies discussed in this opinion occurred within one month of his release from a fifteen-year sentence. The extent of defendant's criminal history, combined with his proclivity for repeat performances, warrant the conclusion that the guidelines underestimate his level of criminality. *See Fahm,* 13 F.3d at 450; *Brown,* 899 F.2d at 98.·

▮ Finally, Parkinson challenges the adequacy of the district court's *documentation* of the factual basis for the departure. He questions neither the reliability nor the accuracy of the evidence upon which the district court explicitly relied. *See Fahm,* 13 F.3d at 450. The district court need not state each and every fact that supports the departure. Rather, it is sufficient that the judge specifically identified his findings as those set out in the presentence report.

### Conclusion

For the reasons stated above, the sentence is *affirmed.*