# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-3085

_____

United States of America,          *
                                   *
       Plaintiff-Appellee,         *
                                   *
    v.                             *
                                   *
Sergio Meza Beltran,               *
                                   *
       Defendant-Appellant.        *
                                   *

_____          Appeals from the United States
                         District Court for the
No. 96-3086          Southern District of Iowa.
_____

United States of America,          *
                                   *
       Plaintiff-Appellee,         *
                                   *
    v.                                  *
                                   *
Romulo Obeso,                      *
                                   *
       Defendant-Appellant.        *

_____

No. 96-3087
_____

United States of America,           *
                                     *
        Plaintiff-Appellee,          *
                                     *
    v.                                         *
                                     *
Maria Cardenas,                      *
                                     *
        Defendant-Appellant.         *

_____

Submitted: February 11, 1997
          Filed: September 11, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and BATTEY,[1] District Judge.
_____

HANSEN, Circuit Judge.

Sergio Meza Beltran, Romulo Obeso, and Maria Cardenas appeal their sentences on federal drug charges, arguing that the district court[2] erred by concluding that it lacked authority to depart under 18 U.S.C. § 3553(b) (1994) on the basis of a

_____

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota, sitting by designation.

[2]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

low purity level of a methamphetamine mixture. Defendant Beltran additionally asserts that the district court erred by denying his request for a sentencing reduction based upon his alleged mitigating role in the offense. We affirm.

On December 23, 1995, a confidential informant informed law enforcement officers that he had observed the defendants in a hotel room with approximately three pounds of methamphetamine. At the request of case agents, the confidential informant placed a telephone call to the hotel room and made arrangements to purchase one pound of methamphetamine for the price of $15,000. Later that evening, officers searched the hotel room, seized approximately 884.73 grams of methamphetamine, and arrested each of the defendants.

The defendants were charged with one count of conspiring to distribute methamphetamine, one count of conspiring to possess with intent to distribute methamphetamine, and various charges of illegally entering the United States. Beltran and Obeso each pleaded guilty to one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 846, and one count of illegal re-entry into the United States by an alien previously convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Cardenas pleaded guilty to one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 846, and one count of possession of a counterfeit alien registration card, in violation of 18 U.S.C. § 1546(a).

At sentencing, each defendant was held accountable for the entire quantity of the methamphetamine seized, which a laboratory report indicated to be a mixture containing less than one percent pure methamphetamine. The district court denied the defendants' 18 U.S.C. § 3553(b) motion for a downward departure based upon the low purity of the methamphetamine and also denied Beltran's request for a sentence reduction based upon his alleged mitigating role in the offense. The district court sentenced Beltran as a career offender to 188 months of imprisonment and sentenced

Obeso to 97 months of imprisonment.  After concluding that Cardenas was not subject to the statutory mandatory minimum sentence because she met the criteria of 18 U.S.C. § 3553(f) (the safety-valve provision), the district court sentenced her to 37 months of imprisonment, a sentence to which she stipulated.

The defendants appeal their sentences, challenging the district court's refusal to grant a downward departure under 18 U.S.C. § 3553(b) based upon the low purity level of the methamphetamine mixture involved in this crime.  The defendants argue that the low purity (less than one percent actual methamphetamine) was a circumstance not contemplated by the Sentencing Commission in formulating the Drug Quantity Table and that this circumstance takes this particular case out of the heartland of cases provided for in the drug quantity guideline.

The district court denied the departure motion, concluding that it lacked authority to depart on this basis.  "We have jurisdiction to review a district court's decision not to depart [from the Sentencing Guidelines] only where the decision is based on the district court's legally erroneous determination that it lacked authority to consider a particular mitigating factor."  United States v. Field, 110 F.3d 587, 591 (8th Cir. 1997) (emphasis omitted).  Whether a particular factor is a permissible basis for departure is a question of law, which we review without deference to the district court's resolution of the issue.  Koon v. United States, 116 S. Ct. 2035, 2047 (1996); United States v. Kalb, 105 F.3d 426, 428 (8th Cir. 1997).

In determining a sentence under the United States Sentencing Guidelines, the district court may depart below the applicable sentencing range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b); see U.S. Sentencing Guidelines Manual § 5K2.0, p.s. (1995).  "To determine whether a circumstance was adequately taken into consideration by the Commission,

-4-

Congress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" Koon, 116 S. Ct. 2044 (quoting 18 U.S.C. § 3553(b)). Thus, we must determine whether the Sentencing Commission explicitly considered the purity level of methamphetamine in a mixture, and if so, whether the circumstance is a forbidden basis for departure or one that may, in an appropriate situation, take the case outside the heartland of cases generally covered by the guideline. See USSG § 5K2.0, p.s. (indicating that a circumstance not ordinarily relevant to a departure decision may be relevant if it "is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing").

We begin our discussion in this case with a look at the relevant statutory language and find that Congress explicitly considered the purity level of methamphetamine when it determined the penalties to be imposed for its illegal use. When describing the mandatory minimum and maximum penalties for manufacturing, distributing, or dispensing a controlled substance, Congress made a distinction between pure methamphetamine and "a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b). Congress provided a 10-year minimum sentence (20 years if death or serious bodily injury results) for manufacturing, distributing, or dispensing either "100 grams or more of methamphetamine" "or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii) (emphasis added). Similarly, Congress provided a 5-year minimum sentence for manufacturing, distributing, or dispensing either "10 grams or more of methamphetamine" "or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine." Id. § 841(b)(1(B)(viii) (emphasis added). Thus, Congress chose to expressly distinguish between pure methamphetamine and lower purity mixtures containing a detectable amount of methamphetamine, specifically providing that a lesser amount of pure methamphetamine will invoke the same statutory minimum penalty as a much greater amount of a mixture.

The text of the Sentencing Guidelines mirrors this statutory language and plainly indicates that the Sentencing Commission adequately took into consideration the purity level of methamphetamine in formulating the Guidelines. While the Guidelines generally "focus on the weight and not the purity of the drugs in determining the offense level," <u>United States v. Upthegrove</u>, 974 F.2d 55, 56 (7th Cir. 1992), the Commission set forth two methods of determining a base offense level in methamphetamine cases-- one based on the weight of the mixture, which "refers to the <u>entire weight of any mixture</u> or substance <u>containing a detectable amount</u> of the controlled substance," USSG § 2D1.1*Notes to Drug Quantity Table (A) (emphasis added); and one based on the pure weight of the methamphetamine, which refers to the actual weight of the methamphetamine itself contained in the mixture, <u>id.</u> § 2D1.1*Notes to Drug Quantity Table (B). Specifically, the Drug Quantity Table of the Sentencing Guidelines directs the sentencing court to use the method which results in the greatest offense level: "In the case of a mixture or substance containing PCP or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual) or methamphetamine (actual), <u>whichever is greater</u>." <u>Id.</u> (emphasis added). The Sentencing Guidelines further provide that trafficking in drug mixtures with unusually high purity levels may warrant an upward departure, "<u>except</u> in the case of PCP or methamphetamine for which the guideline itself provides for the consideration of purity." USSG § 2D1.1, comment. (n.9) (emphasis added).

As already noted, the Commission explicitly considered the purity of methamphetamine when formulating the Drug Quantity Table applicable to methamphetamine violations. In doing so, the Commission constructed a method for determining the base offense level that precludes the district court from sentencing on the basis of drug purity, except in instances where the purity of the methamphetamine results in a <u>greater</u> offense level than the offense level resulting from the weight of the entire substance or mixture. A departure below this "greater" offense level solely on the basis of a mixture's low methamphetamine purity would directly contradict and

effectively eviscerate the Commission's explicit formula directing courts to sentence methamphetamine violations by the method yielding the greatest base offense level. See Upthegrove, 974 F.2d at 56 (noting, "If district courts could depart from the Drug Quantity Table anytime they are faced with drugs of less than 'average' purity, the Sentencing Commission's decision to focus on the weight of the drugs in sentencing would be eviscerated."); see also United States v. Davis, 868 F.2d 1390, 1393 (5th Cir. 1989) (holding that the possibility of an upward departure on the basis of high purity drugs under the Guidelines does not create a corresponding inference that a reduction is appropriate for low purity drugs). Because the Commission has already adequately considered how to handle a case involving a low purity of methamphetamine present in a mixture, including one so low as to be merely "detectable," we believe that the existence of such a circumstance is a "forbidden factor" under Koon, 116 S. Ct. at 2045, which cannot be used as a basis for a downward departure. The district court did not err by concluding that it lacked authority to grant a downward departure on this basis.

Additionally, Beltran argues that the district court erred by denying his request for a mitigating role in the offense reduction under USSG § 3B1.2. We disagree. It is undisputed that Beltran is a career offender within the meaning of USSG § 4B1.1. The career offender guideline implements the Congressional directive that "certain 'career' offenders receive a sentence of imprisonment 'at or near the maximum term authorized.'" USSG 4B1.1, comment. (backg'd.); see 28 U.S.C. § 994(h). The offense level reductions provided in USSG 3B1.2 for a mitigating role in the offense simply do not apply in the career offender context. The career offender guideline trumps all other offense level adjustments, with the exception of reductions for the acceptance of responsibility. USSG § 4B1.1. As a career offender, Beltran was subject to a base offense level of 34, which was appropriately reduced by his acceptance of responsibility under USSG § 3E1.1. See id. Because Beltran indisputably was a career offender, his objection to the district court's determination concerning his role in the

offense is without merit.  See <u>United States v. McNeil</u>, 90 F.3d 298, 300 (8th Cir.), <u>cert.</u> <u>denied</u>, 117 S. Ct. 596 (1996).

Accordingly, we affirm the sentences imposed by the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.