UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 96-2042

UNITED STATES OF AMERICA,

Appellee,

v.

ALINA PEREZ,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Aldrich, Senior Circuit Judge, 

and Lynch, Circuit Judge. 



Lenore Glaser with whom Stern, Shapiro, Weissberg & Garin was on 
brief for appellant.
Michael J. Pelgro, Assistant United States Attorney, with whom 
Donald K. Stern, United States Attorney, was on brief for appellee. 



January 23, 1998


ALDRICH, Senior Circuit Judge. Defendant-appellant 

Alina Perez, convicted of federal controlled substance

offenses and with a record of prior state controlled

substance offenses, was sentenced as a career offender under

the United States Sentencing Guidelines. She had asked for a

downward departure, and appealed its denial. We remanded for

clarification, and she is now here again, no better off.

Perez's indictment in the District Court for the

District of Massachusetts was on one count of conspiracy to

distribute heroin and four counts of possession and

distribution of heroin in furtherance of the conspiracy, in

violation of 21 U.S.C. 846 and 841(a)(1), respectively.

She pled guilty to the conspiracy charge and to two of the

distribution charges, and nolo contendre to the other two 

distribution charges. Because of two prior state controlled

substance felony convictions, she met the career offender

definition of U.S.S.G. 4B1.1 (1995). Achieving career

offender status meant an initial total offense level of

thirty two, an automatic criminal history category of VI, the

highest, and a guideline sentencing range of 151-188 months

after a three point offense level reduction for acceptance of

responsibility.

At her first sentencing hearing, Perez did not

dispute the literal applicability of the career offender

provision, but contended that she was a "small player,"

-2-

outside the heartland of career offender drug cases, because

the amounts of drugs involved in her offenses, and her role

in them, had been small. She accordingly requested a

downward departure under 4A1.3,1 but the court refused. On

appeal, we remanded for clarification of the court's basis,

in light of United States v. Lindia, 82 F.3d 1154 (1st Cir. 

1996), which we had recently decided. At resentencing Perez

again requested departure under 4A1.3. In response the

court acknowledged Lindia, but stated that it was limited to 

permissible considerations, or "factors," and that smallness

of predicates was an impermissible consideration. In light

of Congressional mandate, whether she was a small player was

 

1. Adequacy of Criminal History Category (Policy Statement) 

. . . . .

There may be cases where the court
concludes that a defendant's criminal
history category significantly over-
represents the seriousness of a
defendant's criminal history or the
likelihood that the defendant will commit
further crimes. An example might include
the case of a defendant with two minor
misdemeanor convictions close to ten
years prior to the instant offense and no
other evidence of prior criminal behavior
in the intervening period. The court may
conclude that the defendant's criminal
history was significantly less serious
than that of most defendants in the same
criminal history category (Category II),
and therefore consider a downward
departure from the guidelines.

-3-

a "forbidden factor," beyond consideration for a downward

departure. We quote.

A statute, 28 U.S.C. 994(h),
mandates that a "career offender" as
defined in the statute receive a sentence
at or near the maximum term authorized.
See 4B1.1, Background. The definition 
of controlled substance offense specifies
the minimum severity of offense that
qualifies as one of the two offenses,
that, at minimum, are needed to invoke
the Career Offender provision. Thus, the
congressional mandate does not speak of
the medium-level controlled substance
offense as the heartland for determining
whether a person is a Career Offender.
Instead, the minimum level offense that
is sufficient to qualify for meeting the
Career Offender test is within the
heartland, by statutory mandate.

The court added, as to which there is no complaint,

that it would have granted a departure had it had discretion

to do so. It did, however, once the sentence range had been

calculated without that departure, take the lowest permitted

as the final figure on the ground of Perez's relatively small

role in the offenses. We have two questions: (1) Whether,

if an open matter, the court's construction was sound. (2)

Whether, in light of Lindia, it was open. We answer both 

questions in the affirmative.

This court will not overturn a refusal to depart

from the federal Sentencing Guidelines unless the sentencing

court abused its discretion. See Koon v. United States, 116 

S. Ct. 2035, 2043 (1996). At the same time, whether

consideration of a given factor is impermissible under any

-4-

circumstances is a question of law, and we need not defer to

the district court's resolution.

We start with 28 U.S.C. 994(h), that requires the

Sentencing Commission to "assure" that the Guidelines produce

sentences for certain three-time ("career") offenders that

are "at or near the maximum term authorized" by statute.2

The Court, recognizing Congress's maximum intent, has held

 

2. The Commission shall assure that the
guidelines specify a sentence to a term
of imprisonment at or near the maximum
term authorized for categories of
defendants in which the defendant as
eighteen years old or older and--

(1) has been convicted of a
felony that is--

(A) a crime of
violence; or

(B) an offense
described in
section 401 of the
C o n t r o l l e d
Substances Act (21
U.S.C. 841)
. . . ; and

(2) has previously been
convicted of two or more prior
felonies, each of which is--

(A) a crime of
violence; or

(B) an offense
described in
section 401 of the
C o n t r o l l e d
Substances Act (21
U.S.C. 841)
. . . .

-5-

this to be the term reached after applying any applicable

statutory enhancements. United States v. LaBonte, 117 S. Ct. 

1673 (1997) (6-3), rev'g United States v. LaBonte, 70 F.3d 

1396 (1st Cir. 1996) (2-1). The Commission implemented

994(h) with Guidelines 4B1.1,3 that computes sentences

for career offenders based on the identical but re-termed

"offense statutory maximum." In our LaBonte decision, 

finding broad discretion in the Commission, we upheld a prior

version of 4B1.1's Application Note 2 that excluded

statutory enhancements from the words "offense statutory

maximum." Then, between our decision and its reversal, we

held, broadly, in United States v. Lindia, 82 F.3d 1154, 

1164-65 (1st Cir. 1996), that a district court might consider

a career offender's criminal history "unusual," and outside

the "heartland" of career offender cases, and, if so, that

4A1.3 allowed downward departure. We made no review or

analysis of the type of criminal history involved, but simply

noted that this departure turned on whether career offender

treatment inaccurately reflected criminal history within the

 

3. U.S.S.G. 4B1.1 provides that a defendant is a career
offender if (1) the defendant was at least eighteen years old
at the time of the instant offense, (2) the instant offense
of conviction is a felony that is either a crime of violence
or a controlled substance offense, and (3) the defendant has
at least two prior felony convictions of either a crime of
violence or a controlled substance offense.

-6-

meaning of 18 U.S.C. 3553(b),4 id. at 1165, viz., whether 

a career offender defendant's particular history had been

adequately considered by the Commission in formulating the

Guidelines.

We note, by way of initial observation, at least,

something of a puzzlement: in light of the Congressional

stricture "at or near," how to reconcile Congress's clear

purpose of maximum sentences for three-time violent or drug

offenders, id. at 1164, with allowing adjustments5 or 

downward departures by 4A1.3 which might be sizeable? Does

that mean that "at or near" should be broadly construed to

permit substantial reductions when they are applicable? Does

it suggest possible non-recognition of some type or types of

 

4. 18 U.S.C. 3553(b) provides, in relevant part:

(b) Application of guidelines in imposing
a sentence. -- The court shall impose a
sentence of the kind, and within the
range, [provided by the guidelines]
unless the court finds that there exists
an aggravating or mitigating circumstance
of a kind, or to a degree, not adequately
taken into consideration by the
Sentencing Commission in formulating the
guidelines that should result in a
sentence different from that described.

5. The Guidelines specifically authorize application of
3E1.1 (acceptance of responsibility) to career offenders.
Whether 3B1.2 (mitigating role in instant offense) also may
apply is unsettled. Compare United States v. Beltran, 122 
F.3d 1156, 1160 (8th Cir. 1997); United States v. Morales- 
Diaz, 925 F.2d 535, 540 (1st Cir. 1991); with United States 
v. Williams, 37 F.3d 82, 84 (2d Cir. 1994); United States v. 
Alvarez, 914 F.2d 213, 214-15 (10th Cir. 1990). 

-7-

adjustments or departures applicable to ordinary defendants?

We find no pertinent legislative history. In LaBonte the 

Court remarked, "This statutory phrase unquestionably permits

a certain degree of flexibility for upward and downward

departures and adjustments." 117 S. Ct. at 1678. The word

"certain" was not defined.

Since adjustments and departures could well achieve

a substantial reduction from the maximum authorized term, it

is not surprising that wide variations have developed as to

what is perceived to be within "at or near" and, accordingly,

the degree of flexibility allowed to the courts.6 In our

LaBonte decision alone the majority, stating there must be 

some "play in the joints," accepted a sentence 61.4% of what

it thought the applicable statutory maximum, 70 F.3d at 1409-

10, while the dissenter thought even 72.8% would not be

 

6. See United States v. Novey, 78 F.3d 1483, 1487 n.5 (10th 
Cir. 1996) (noting that a sentence 91% of the statutory
maximum was "near" but that 73% was not), cert. denied, 117 
S. Ct. 2407 (1997); United States v. Moralez, 964 F.2d 677, 
683 n. 5 (7th Cir.) (noting that a sentence 83% of the
statutory maximum "may well be short of being 'at or near the
maximum term authorized'"), cert. denied, 506 U.S. 903 
(1992); see generally United States v. Branham, 97 F.3d 835, 
846-47 (6th Cir. 1996); United States v. Hernandez, 79 F.3d 
584, 598-99 (7th Cir. 1996), cert. denied, 117 S. Ct. 2407 
(1997); United States v. Fountain, 83 F.3d 946, 952-53 (8th 
Cir. 1996), cert. denied, 117 S. Ct. 2412 (1997); United 
States v. Gardner, 18 F.3d 1200, 1202 (5th Cir.), cert. 
denied, 513 U.S. 879 (1994); United States v. Norflett, 922 
F.2d 50, 53 n. 4 (1st Cir. 1990); United States v. Hays, 899 
F.2d 515, 520-21 (6th Cir.) (Merritt, C.J., dissenting),
cert. denied, 498 U.S. 958 (1990); United States v. Alves, 
873 F.2d 495, 498 (1st Cir. 1989).

-8-

"near." Id. at 1418. In the present case the district 

court, supra, even while excluding smallness of predicates as 

a ground for departure, ended by imposing a sentence 63% of

the maximum authorized by giving Perez the benefit of

accepting responsibility.7 Had it been free to depart

downward because of the smallness of the offenses, the court

indicated that it would have sentenced Perez to a mere 21

months (9%), within the range applicable without 4B1.1.

This extended recital, if it does nothing else,

reveals a picture that supports the conclusion that the

Commission, commanded to "assure" that the Guidelines produce

near maximum sentences for the statutorily defined category

of recidivists, did not want to leave open to the courts a

departure from the statutory figure based on the size of the

offenses. We believe it made this clear by adopting a

single, broad definition of "felony."8 Second, it adopted a

single criminal history category rather than a sliding scale

based on the seriousness of the past offenses. Compare 

 

7. The applicable statutory maximum was 20 years (240
months). Under the Guidelines, Perez's applicable sentencing
range initially was 210-262 months. Crediting her for
accepting responsibility brought her applicable range to 151-
188 months. The court then, within its discretion, chose the
low end, 151 months, 63% of 240 months, for the recognized
small role in the offenses.

8. We note that "felony" for 4B1.1 purposes includes both
large and small offenses. See 4B1.2, Commentary (defining 
felony as an "offense punishable by death or imprisonment for
a term exceeding one year.").

-9-

4B1.1 (assigning criminal history category VI to "every"

career offender "case"), with 4A1.1 and Ch. 5, pt. A, 

Sentencing Table (determining criminal history category for

non-career offenders by the number of accumulated criminal

history points). With such deliberate uniformity, how is a

court suddenly to determine, at the low end when all other

degrees of seriousness had been treated equally, special

terms for one group? And on what basis?9 For ordinary

offenders, where there is a sliding point scale, the curve

may be thought to continue. Here there is no curve at all. 

Perhaps the best answer to defendant's claim lies

in the district court's proffered alternative: removing her

from the career offender category entirely. Thus if downward

departure was possible based on the smallness of the

offenses, we would have a provision -- whose sole purpose is

special, substantially increased sentences for repeat

offenders that meet a specific description -- completely read

out of the Guidelines by a judicial finding that the

Commission could not really have intended to include what it

said it did. This cannot be the purpose of downward

departures. Rather, we hold that every offender whose

offenses meet the statutory career offender definition is

 

9. To put this in mathematical terms, suppose a court rates
seriousness of the offense at 1-20. On what basis can it
determine that number 1 was unusual, and that the Commission
had not thought of it, and that if it had thought it would
not have applied the even treatment it gave 2-20?

-10-

within the intended heartland, and departure is available

only for those personally, and not by the size of the

offenses, demonstrating an absence of recidivist

tendencies.10

This conclusion accords with the statutory purpose.

To speak the obvious, the unique feature of the career

offender provision is its focus on recidivism. To return to

Labonte, 117 S. Ct. at 1677, "Congress has expressly provided 

enhanced maximum penalties for certain categories of repeat

offenders in an effort to treat them more harshly than other

offenders." Congress itself defined the felonious conduct

whose repetition, reflecting habituality and/or

 

10. We have no quarrel with the principle that there may be
downward departures because of individual circumstances in
literal career offender cases that indicate the absence of
recidivism. Cf. United States v. Collins, 122 F.3d 1297, 
1306-07 (10th Cir. 1997) (age and infirmity of defendant, and
fact that one predicate conviction was close to ten years
prior to the instant offense); United States v. Fletcher, 15 
F.3d 553, 557 (6th Cir. 1994) (combination of defendant's
extraordinary family responsibilities, the age of his
predicates, the time intervening between the predicates, and
his attempts to deal with drug and alcohol problems); United 
States v. Shoupe, 988 F.2d 440, 447 (3d Cir. 1993) 
(defendant's age and immaturity at time of predicates,
temporal proximity of predicates, and fact that predicates
occurred nearly fifteen years before the instant offense);
United States v. Clark, 8 F.3d 839, 845 (D.C. Cir. 1993) 
(exposure to domestic violence and childhood abuse that
"significantly affected [defendant's] predisposition to
commit his first two crimes"); United States v. Bowser, 941 
F.2d 1019, 1024-25 (10th Cir. 1991) (defendant's young age at
the time of his predicates, close temporal proximity of the
predicates, and fact that defendant had been punished
concurrently for the predicates); United States v. Lawrence, 
916 F.2d 553, 554 (9th Cir. 1990) (psychiatrist's testimony
that likelihood of recidivism was low).

-11-

incorrigibility, demands stiff punishment. When, in another

circumstance, the Commission took a lower maximum, and we

approved it in LaBonte, the Court reversed. Here we do not 

think that the Commission even intended differentiation to be

possible.

It is true that some courts have, in part, allowed

consideration of the "minor nature" of the past offenses, but

none has adequately established a connection with

recidivism.11

There remains the question whether it is open to us

to make this decision. Clearly we are not foreclosed by

Koon, a non-career offender case, whose general discussion 

relates to matters not fully considered by the Commission.

Koon does not advise us as to what factors meet that 

definition in a career offender case. We are more concerned

with our decision in Lindia, 82 F.3d at 1165, where we said, 

speaking generally, that a sentencing court might depart

downward on the basis of a career offender's criminal history

if it considered it "unusual":

When faced with a departure motion in a
career-offender case, as in other cases,
the court's experience and unique
perspective will allow it to decide if
the case before it falls outside the
guideline's "heartland," warranting
departure. 

 

11. See United States v. Spencer, 25 F.3d 1105, 1113 (D.C. 
Cir. 1994); United States v. Smith, 909 F.2d 1164, 1169 (8th 
Cir. 1990), cert. denied, 498 U.S. 1032 (1991). 

-12-

We believe our decision in Lindia did not rule it was open to 

a court to find smallness of offenses to make a career

offender's case unusual, or go so far as to foreclose our

holding that some parts of criminal history have been fully

considered by the Commission. If it be felt that our

unpublished memorandum order on remand here12 could be read

as saying the opposite, it is not the law of the case, and we

may reconsider.

Affirmed. 

- Dissenting opinion follows -

 

12. In view of our recent opinion
clarifying that a sentencing court "may
invoke 4A1.3 to depart downward from
the career offender category if it
concludes that the category inaccurately
reflects the defendant's actual criminal
history," United States v. Lindia, No. 
95-2200, slip op. at 21 (1st Cir. April
18, 1996), together with our uncertainty
whether the district court made a
discretionary decision not to depart or,
instead, viewed its authority as more
restricted than Lindia allows, we vacate 
the sentence and remand for further
consideration.

-13-

LYNCH, Circuit Judge, dissenting. With respect for LYNCH, Circuit Judge, dissenting. 

the views of my colleagues, I am compelled to dissent. In my

mind, the majority opinion misreads the controlling statute

and the United States Sentencing Guidelines, and is contrary

to the precedent of the Supreme Court, this court, and the

decisions of each of the other circuit courts which have

considered the issue. Our holding in United States v. 

Lindia, 82 F.3d 1154 (1st Cir. 1996) directly controls this 

case, as does the Supreme Court's holding in Koon v. United 

States, 116 S. Ct. 2035 (1996), and those cases require 

reversal.

The sole issue to be decided is whether departures

under U.S.S.G. 4A1.3 are categorically prohibited for

defendants classified as career offenders under U.S.S.G. 

4B1.1 when the defendant's prior criminal record may over- or

understate the seriousness of the offenses and the district

court could find that this defendant was not in the heartland

of career offenders.13 The district court concluded that

 

13. The career offender provisions are triggered by two
prior convictions. The quantities of drugs and Alina Perez's
role in the prior offenses are documented in the record of
the district court. Ms. Perez, a heroin addict, sold drugs
for $60 to an undercover police officer in 1987, and pled
guilty to distribution of heroin and cocaine in 1988. In
1991, Ms. Perez was arrested for distribution of cocaine.
In fairness to the government, it should be noted that
there were three other state court drug convictions which the
defendant successfully vacated before her federal sentencing.
In addition, after her federal sentence, she pled guilty to
another state cocaine distribution charge and received a five

-14- 14

such a categorical prohibition deprived it of discretion to

consider whether Perez's criminal history category overstated

the seriousness of her prior crimes and therefore whether

Perez could receive a downward departure. The district court

decided that it had no discretion to depart, but said that,

if it were permitted, it would have granted a downward

departure.14 On this question of law, the district court was

in error; it was not forbidden from considering whether

defendant's offenses fall within the heartland or were

atypical.

Offenders, such as defendant Perez, who have two

prior felony convictions for controlled substance offenses

are automatically placed in criminal history category VI (the

highest criminal history category) and assigned an offense

level determined by the "offense statutory maximum" under

 

year sentence concurrent with her federal sentence.
In this federal offense, Perez was arrested for possession
of 13.641 grams of heroin. Without the application of the
career offender guidelines, her sentencing range would have
been 18 to 24 months. Because she was a career offender, her
sentencing range jumped to 151 to 188 months.

14. It is settled law that great deference is accorded to a
district court's determination that a case falls outside of
the heartland. When, as in this case, the district court
decides that a case is so unusual that a departure is
warranted, deference is owed to its "special competence" in
deciding whether the case before it is a heartland case.
See, e.g., Koon, 116 S. Ct. at 2046-47; Lindia, 82 F.3d at 
1165; United States v. Rodriguez-Cardona, 924 F.2d 1148, 1157 
(1st Cir. 1991). The majority's concerns about "special
treatment for one group" are misplaced. Every departure
raises the same difficult issue of separating an unusual case
from ordinary cases.

-15- 15

U.S.S.G. 4B1.1. The Guidelines sentencing table mandates a

sentencing range (in this case 151 to 188 months) where the

defendant's criminal history category and offense level

intersect. Section 4A1.3 allows a sentencing court to grant

a departure from the sentencing range mandated by the

Guidelines when the "defendant's criminal history [is]

significantly less serious than that of most defendants in

the same criminal history category . . . ."

The majority concludes that departures under 

4A1.3 based on an offender's criminal history are

categorically forbidden for career offenders. This

conclusion derives from the majority's misreading of 28

U.S.C. 994(h). The majority's conclusion depends upon its

assertion that 994(h) requires the Sentencing Commission to

"produce" sentences for three-time ("career") offenders that

are "at or near the maximum term authorized" by statute.

That assertion is not correct. What the statute actually

says is: "The Commission shall assure that the guidelines 

specify a sentence to a term of imprisonment at or near the 

maximum term authorized for [career offenders]." 28 U.S.C. 

994(h) (emphasis added).

The Guidelines do indeed specify such sentences at

or near the maximum for career offenders in U.S.S.G. 4B1.1.

But nothing in 994(h) requires that every offender who 

falls under the Guidelines provisions for career offenders

-16- 16

receive the maximum sentence. The Guidelines were designed

to allow for departures when appropriate, and departures are

permissible in exceptional cases. See Lindia, 82 F.3d at 

1165 ("Section 994(h), however, is directed to the

Commission's duty to formulate guidelines pertaining to

categories of defendants, not to sentencing courts faced with

individual defendants."); United States v. Novey, 78 F.3d 

1483, 1489 (10th Cir. 1996) ("Section 994(h) does not mandate

that each individual defendant receive a sentence 'at or near

the maximum term authorized.' Rather, the statute directs

the Commission to assure that the guidelines specify such a

term for 'categories of defendants' in which the defendant is

a recidivist violent felon or drug offender.").

Because of the misreading by the majority, it is

important to clarify the proper method for determining

whether a departure is warranted under U.S.S.G. 4A1.3.

Section 4A1.3 is concerned with the accuracy of the

defendant's criminal history category. Under U.S.S.G. 

4A1.3, the point of reference for departures is a comparison

with the other offenders in the defendant's criminal history

category. The proper departure inquiry in this case is to

compare the defendant to the "typical" or "heartland"

criminal history category VI offender. As 4A1.3 says:

There may be cases where the court concludes
that a defendant's criminal history category
significantly over-represents the seriousness
of a defendant's criminal history or the 

-17- 17

likelihood that the defendant will commit
further crimes. . . . The court may
conclude that the defendant's criminal 
history was significantly less serious than 
that of most defendants in the same criminal 
history category . . . and therefore consider 
a downward departure from the guidelines.

U.S.S.G. 4A1.3 (emphasis added)

The question is not whether the previous offenses

were "small" but rather whether the offender's criminal history

is so "significantly less serious" than that of the heartland

criminal history category VI offender (not just other career

offenders) that a departure is warranted. Cf. United States v. 

Reyes, 8 F.3d 1379, 1384 (9th Cir. 1993) (proper comparison is 

with other offenders).

In addition to its misreading of the controlling

statute, the majority ignores the plain language of U.S.S.G. 

4A1.3. Section 4A1.3 repeatedly states that a departure may be

granted if "the criminal history category does not reflect the

seriousness of the defendant's past criminal conduct or the 

likelihood that the defendant will commit other crimes."

(emphasis added). The Guideline's use of the word "or" instead

of "and" is telling. Under 4A1.3, a defendant's "past criminal

conduct" may alone justify a departure, apart from his likelihood 

of recidivism. The majority's attempt to distinguish the

overwhelming precedent contrary to its decision on the grounds

that these other cases did not establish a connection with

recidivism is contrary to the plain meaning of 4A1.3. In any

-18- 18

event, an offender's criminal past is an excellent (perhaps the

best) predictor of his likelihood of recidivism.

Nor does the majority consider that upward departures

from criminal history category VI are explicitly endorsed by 

4A1.3, based on "the nature of the prior offenses." This court

has routinely approved such upward departures for repeat

offenders based on their prior bad acts. See, e.g., United 

States v. Black, 78 F.3d 1, 8 (1st Cir. 1996); United States v. 

Parkinson, 44 F.3d 6, 10 (1st Cir. 1994). Under the majority 

opinion, 4A1.3 becomes a one-way rachet; upward departures may

be granted based on prior offenses, but not downward departures.

The plain language of 4A1.3 demonstrates that, except for the

specific exception of criminal history category I offenders, both

upward and downward departures are contemplated. Neither

Congress nor the Sentencing Commission intended such a lack of

even-handedness.

In addition to misreading the controlling statute and

the language of the Guidelines, the majority also misinterprets

controlling precedent. The majority incorrectly implies that the

Supreme Court's recent decision in United States v. LaBonte, 117 

S. Ct. 1673 (1997) undercuts our holding in Lindia that a 

sentencing court may grant a career offender a downward departure

if the court concludes that the guideline career offender

criminal history category inaccurately reflects the defendant's

-19- 19

criminal history. LaBonte has little bearing on the issue to be 

decided in this case.

LaBonte addresses the offense level axis of the 

sentencing table, not the criminal history category axis. The

issue in LaBonte was not departures but the meaning of the phrase 

"offense statutory maximum" for purposes of computing an

offender's offense level. The Court was asked to decide

"whether, by 'maximum term authorized,' Congress meant (1) the

maximum term available for the offense of conviction including

any applicable statutory sentencing enhancements, . . . or (2)

the maximum term available without such enhancements . . . ."

LaBonte, 117 S. Ct. at 1675. 

LaBonte concerned the structure of the Guidelines and 

determined that, in order to assure that the "guidelines specify 

a sentence to a term of imprisonment at or near the maximum term

authorized for [career offenders]" as mandated by 28 U.S.C. 

994(h), the phrase "maximum term authorized" must "include all

applicable statutory sentencing enhancements." LaBonte, 117 S. 

Ct. at 1675. LaBonte does not, however, foreclose the 

possibility of departures for unusual career offenders who fall

outside the heartland. 

Indeed, LaBonte cuts against the majority's holding. 

In LaBonte, the Supreme Court remarked that 994(h) 

"unquestionably permits a certain degree of flexibility for . . .

downward departures . . . ." LaBonte, 117 S. Ct. at 1678. But 

-20- 20

the Court was careful to point out that the "pertinent issue" in

the case was "'not how close the sentence must be to the

statutory maximum, but to which statutory maximum it must be

close.'" Id. at 1678 (quoting United States v. Fountain, 83 F.3d 

946, 952 (8th Cir. 1996)). LaBonte's reference to departures is 

perhaps dicta, but this dicta further demonstrates that the

majority misinterprets the case.

This court has already decided the issue, in Lindia, 

against the majority position. This court decided in Lindia that 

"a sentencing court may invoke 4A1.3 to depart downward from

the career-offender category if it concludes that the category

inaccurately reflects the defendant's actual criminal history . .

. ." Lindia, 82 F.3d at 1165. Lindia addressed precisely the 

issue we face in this case. Lindia noted that our circuit has 

long recognized that when a case falls outside the applicable

guideline's heartland, a departure may be warranted. Id. at 

1164. Lindia recognized that there were some factors that had 

been "explicitly rejected as permissible grounds for departure"

but held that the Commission had "not designated as a 'forbidden

departure' the overrepresentation of a criminal history category

in career offender cases." Id. at 1164-65. 

Lindia's holding is consistent with the holdings of 

each of the other circuit courts that have considered this issue,

both before and after Lindia was decided. See, e.g., United 

States v. Collins, 122 F.3d 1297, 1304 (10th Cir. 1997) ("[F]or a 

-21- 21

defendant who technically qualifies as a career offender but

whose criminal history and likelihood of recidivism significantly

differ from the heartland of career offenders, the sentencing

court may consider a departure from the career offender

category."); United States v. Spencer, 25 F.3d 1105, 1113 (D.C. 

Cir. 1994); United States v. Fletcher, 15 F.3d 553, 557 (6th Cir. 

1994); Reyes, 8 F.3d at 1383-84; United States v. Shoupe, 988 

F.2d 440, 447 (3d Cir. 1993); United States v. Rogers, 972 F.2d 

489, 493-94 (2d Cir. 1992); United States v. Beckham, 968 F.2d 

47, 54 (D.C. Cir. 1992) (agreeing with "the unanimous judgment of

the other circuit courts to have considered the issue that 

4A1.3 authorizes a downward departure when criminal history

category VI, assigned pursuant to the career offender guideline,

significantly overrepresents the seriousness of a defendant's

past criminal conduct and the likelihood of recidivism") (citing

cases); United States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir. 

1990); United States v. Brown, 903 F.2d 540, 545 (8th Cir. 1990). 

In both Spencer and Reyes, our sister circuits held specifically 

that departures for career offenders are permissible under 

4A1.3 when the defendant's predicate offenses were relatively

minor.

The majority opinion is also directly contrary to the

Supreme Court's holding in Koon, and to the intent of Congress as 

interpreted by Koon. Koon explained that "a federal court's 

examination of whether a factor can ever be an appropriate basis

-22- 22

for departure is limited to determining whether the Commission

has proscribed, as a categorical matter, consideration of the

factor. If the answer to the question is no . . . the sentencing

court must determine whether the factor, as occurring in the

particular circumstances, takes the case outside the heartland of

the applicable Guideline." Koon, 116 S. Ct. at 2051. Thus if a 

factor is not expressly forbidden, it may at least in the

exceptional case serve as the basis for a departure. Koon 

explicitly states that "for the courts to conclude a factor

[other than an explicitly forbidden factor such as race] must not

be considered under any circumstances would be to transgress the

policymaking authority vested in the Commission." Id. at 2050. 

In Koon the Supreme Court expressly held that only a 

few reasons for departure are entirely prohibited under the

Guidelines, as the Guidelines do not limit the kinds of factors,

whether or not mentioned anywhere else in the Guidelines, that

could constitute grounds for departure in an unusual case. The

only departure factors entirely forbidden by the Guidelines are:

race, sex, national origin, creed, religion and socioeconomic

status, see U.S.S.G. 5H1.10, lack of guidance as a youth, see 

U.S.S.G. 5H1.12, drug or alcohol dependence, see U.S.S.G.  

5H1.4, and economic duress, see 5K2.12. In contrast, 

departures for atypical criminal history, far from being a

forbidden factor, are specifically encouraged under U.S.S.G. 

4A1.3. See Collins, 122 F.3d at 1304 ("Because section 4A1.3 

-23- 23

provides an encouraged basis for departure not already taken into

account by the Commission, over-representation of a defendant's

criminal history or likelihood for recidivism always will be an

approved ground for departure."); Lindia, 82 F.3d at 1165. 

The majority holds that, because the defendant's

prior drug felonies are the reason she is categorized as a career

offender, her prior crimes were already "adequately taken into

account by the Sentencing Commission in formulating the

guidelines," U.S.S.G. 5K2.0, and could not therefore serve as

the basis of a departure. Koon explicitly addressed this issue, 

and decided that if a Guideline already takes a certain factor

into account, then the factor must be present to an "exceptional

degree" before a departure may be granted. But Koon, contrary to 

the reasoning employed by the majority, did not rule out such

departures entirely. Under Koon, if an encouraged factor (e.g., 

criminal history under 4A1.3) is already taken into account by

a Guideline (as is criminal history in the career offender

guideline), "the court should depart only if the factor is

present to an exceptional degree or in some other way makes the

case different from the ordinary case where the factor is

present." Koon, 116 S. Ct. at 2045. See also Lindia, 82 F.3d at 

1164-65; United States v. Rivera, 994 F.2d 942, 947-49 (1st Cir. 

1993). Under Koon, the majority's holding that departures under 

4A1.3 for career offenders are precluded by implication is

-24- 24

incorrect. Departures for career offenders under 4A1.3 should

be extremely rare, but it is wrong to forbid them entirely.

Koon's holding that only expressly forbidden 

departure factors may never serve as the basis for a departure

has been, until today, regularly followed by this court, and thus

the majority's position is in conflict with other of our

precedent. See, e.g., United States v. Brewster, 127 F.3d 22, 26 

(1st Cir. 1997) (noting that it is a "fundamental principle of

departure jurisprudence: that, in the absence of an explicit

proscription, courts generally should not reject categorically

any factor as a potential departure predicate"); United States v. 

Clase-Espinal, 115 F.3d 1054, 1060 (1st Cir. 1997) (noting Koon's 

instruction that "with few exceptions, departure factors should

not be ruled out on a categorical basis"); United States v. 

Hardy, 99 F.3d 1242, 1249 (1st Cir. 1996) (stating that "a 

departure criterion cannot be deemed impermissible in all

circumstances unless categorically foreclosed by the

Commission"). In Brewster, the court said that a "fundamental 

lesson" of prior First Circuit caselaw is "'that a court should

not infer from inexplicit Guidelines language, or from language

that authorizes use of a particular factor in some cases, an

absolute barrier in principle against using certain other factors

as grounds for departure in other unusual circumstances.'" 127

F.3d at 27 (quoting United States v. Doe, 18 F.3d 41, 47 (1st 

Cir. 1994)).

-25- 25

In United States v. Olbres, 99 F.3d 28 (1st Cir. 

1996), this court interpreted Koon as dictating that even a 

discouraged factor such as a defendant's vocational skills is not

categorically prohibited as a basis for a departure. See id. at 

34-35 ("Categorical interpretations 'would nullify the

Commission's treatment of particular departure factors and its

determination that, with few exceptions, departure factors should

not be ruled out on a categorical basis.' . . . [E]ven if the

present case merely concerned vocational skills, a per se

approach would be inappropriate and the district court would

still have to consider whether the case was in some way

'different from the ordinary case where the factor is present.'")

(quoting Koon, 116 S. Ct. at 2045, 2051). In contrast to 

vocational skills, departures under 4A1.3 for an

overrepresentative criminal history category are specifically

encouraged under the Guidelines. As Olbres and a host of our 

other opinions point out, Koon rejected categorical denials of 

departures based on all but a few explicitly forbidden factors,

such as sex and race.

Departures under 4A1.3 for career offenders based

on the nature of the defendant's involvement and the quantity of

drugs in the prior offenses are not categorically foreclosed.

The majority opinion effectively overrules Lindia, something a 

subsequent panel does not have the power to do. See United 

States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995); Williams v. 

-26- 26

Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995). Lindia is 

directly on point, and has not been undercut by the controlling

authority of LaBonte. Cf. Stella v. Kelley, 63 F.3d 71, 74 (1st 

Cir. 1995).

The majority compounds its error by clouding its

holding with a distinction based on the "type" of criminal

history involved. The suggested distinction between "personal"

versus "offense" criminal history is a distinction without a

difference. An offender's criminal history category is computed

based on that person's prior criminal acts, i.e., the offenses

the person committed. The offenses in which the defendant

participated define an offender's criminal history. 

Our role is limited to deciding an issue of law:

whether a departure based on the character of the defendant's

prior offenses is ever permissible for career offenders. In

accordance with Koon, our precedent, and the precedent of our 

sister circuits, I would answer this question in the affirmative.

The Supreme Court in Koon has committed, in the first instance, 

the decision whether to exercise this discretion to grant

allowable departures to the district court. See Koon, 116 S. Ct. 

at 2046-47.

I would reverse the district court and remand the

case for resentencing.

-27- 27