**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JEREMY PATRICK JEPPESON, also
known as Jeremy P. Rogers,

      Defendant - Appellant.

No. 02-8071

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 02-CR-45-02-J)**

---

Submitted on the briefs:[*]

Michael A. Blonigen, Special Assistant U.S. Attorney (and Matthew H. Mead,
U.S. Attorney, on the brief), Casper, Wyoming, for Plaintiff - Appellee.

Keith R. Nachbar, Keith R. Nachbar, P.C, Casper, Wyoming, for Defendant -
Appellant.

---

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G).  The case therefore
is ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Appellant Jeremy P. Jeppeson was charged with conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and § 846 ("count one"), and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2 ("count two"). Pursuant to a plea agreement Mr. Jeppeson pleaded guilty to count one, and the government dismissed count two. In light of Mr. Jeppeson's status as a career offender under U.S.S.G. § 4B1.1, the presentence report ("PSR") calculated the guideline range for his offense to be 188-235 months. Accordingly, the district court sentenced Mr. Jeppeson to 188 months of imprisonment followed by a four-year term of supervised release. In so doing, the district court denied Mr. Jeppeson's request for a role in offense reduction under U.S.S.G. § 3B1.2, holding that such a reduction is unavailable to a defendant who qualifies as a career offender under § 4B1.1. On appeal, Mr. Jeppeson argues that the district court erred by (1) refusing to reduce his offense level under § 3B1.2, and (2) refusing to consider his request for a downward departure from the applicable guideline range under U.S.S.G. § 5K2.0 based on his alleged minor or minimal role. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

1.    <u>Propriety of a Downward Adjustment Under § 3B1.2</u>

We review de novo a district court's interpretation of the Sentencing Guidelines and review its factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. <u>United States v. Brown</u>, 314 F.3d 1216, 1222 (10th Cir. 2003). The question of whether a defendant designated as a career offender under § 4B1.1 is eligible to receive a downward adjustment for his or her role in the offense under § 3B1.2 is a question of first impression in this circuit. However, every other federal appellate court that has addressed the question has concluded that a defendant is not entitled to a downward adjustment under § 3B1.2 following a career offender adjustment under § 4B1.1. <u>See e.g.</u>, <u>United States v. Johnson</u>, 155 F.3d 682, 683-84 (3d Cir. 1998); <u>United States v. Ward</u>, 144 F.3d 1024, 1036 (7th Cir. 1998); <u>United States v. Beltran</u>, 122 F.3d 1156, 1160 (8th Cir. 1997). Nevertheless, Mr. Jeppeson argues that because the career offender guideline "never expressly state[s] that a District Court is precluded from applying the mitigating role adjustment found in [] § 3B1.2," Aplt. Br. at 12, and because the Sentencing Commission has determined "that a participant's role in the offense must be considered when applying the sentencing guidelines," <u>id.</u> at 14, the district court erred in refusing to consider whether he was entitled to a role in offense

reduction.[1]  We disagree.

After defining the term "career offender," § 4B1.1 provides that:

If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply.  A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | | Offense Level* |
|---|---|---|
| (A) | Life | **37** |
| (B) | 25 years or more | **34** |
| (C) | 20 years or more, but less than 25 years | **32** |
| (D) | 15 years or more, but less than 20 years | **29** |
| (E) | 10 years or more, but less than 15 years | **24** |
| (F) | 5 years or more, but less than 10 years | **17** |
| (G) | More than 1 year, but less than 5 years | **12**. |

*If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

U.S.S.G. § 4B1.1 (Nov. 2001).[2]

---

[1]  Mr. Jeppeson also argues that the Sentencing Guidelines are ambiguous as to the permissibility of a § 3B1.2 adjustment for career offenders, and that the rule of lenity therefore requires us to resolve the ambiguity in his favor.  Because we do not believe the sentencing guidelines at issue here are ambiguous, we reject the argument that the rule of lenity applies in the instant case.  See United States v. Gay, 240 F.3d 1222, 1232 (10th Cir. 2001) (rejecting application of rule of lenity to interpretation of a provision in the Guidelines because the language was not "grievously ambiguous or uncertain.").

[2]  We note that the PSR author erroneously relied on the November 2002 version of the Sentencing Guidelines Manual instead of the November 2001 version, which was in effect at the time of Mr. Jeppeson's sentencing hearing on July 12, 2002.  III R. at 6, ¶ 20.  However, because application of the correct version of the Guidelines Manual would not have resulted in a different guideline range, we hold that this error was harmless.

As the foregoing makes clear, upon determining that a defendant qualifies as a career offender, the court must compare the offense level listed in the table (which is determined by reference to the maximum statutory sentence authorized for the offense of conviction) to the offense level that would apply in the absence of a career offender adjustment. If the career offender offense level is greater than the "otherwise applicable" level, the sentencing court must employ the career offender offense level and a criminal history category of VI in determining the defendant's guideline range. In the current action, Mr. Jeppeson's "otherwise applicable" offense level would be 25. III R. at 6, ¶ 28. However, because the offense to which he pleaded guilty carried a maximum statutory sentence of 40 years, 21 U.S.C. § 841(b)(1)(B), the applicable offense level for a career offender such as Mr. Jeppeson was 34. Because the offense level listed in § 4B1.1 was higher than his "otherwise applicable" offense level, the table-derived offense level was used, which after a three-level adjustment for acceptance of responsibility yielded an adjusted offense level of 31. III R. at 7, ¶¶ 29-31.

Although Mr. Jeppeson makes much of the fact that § 4B1.1 does not expressly preclude a role in offense adjustment, a close look at the sequence in which a sentencing court is instructed to apply § 4B1.1 reveals that courts should not make such a reduction subsequent to making a career offender adjustment. Section 1B1.1 of the Guidelines sets forth the order in which the various sections

of the Guidelines should be applied. See United States v. Alessandroni, 982 F.2d 419, 421 (10th Cir. 1992) (noting that § 1B1.1 "make[s] clear that courts are to follow a particular order when determining a sentence under the Guidelines."). Subsections (a) and (b) of § 1B1.1 direct courts to first determine the applicable offense guideline and then determine the appropriate base offense level. Subsection (c) provides that a court should then "[a]pply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three." Subsection (e)[3] then directs the sentencing court to make any applicable adjustment for acceptance of responsibility under § 3E1.1, and subsection (f) instructs the court to calculate the defendant's criminal history category and to "[d]etermine from Part B of Chapter Four any other applicable adjustments," which of course includes the upward "career offender" adjustment under § 4B1.1. Subsection (g) then instructs the sentencing court to determine the appropriate guideline range from the table contained in Part A of Chapter Five of the Guidelines Manual.

The foregoing sequence demonstrates that in applying the various sections of the Guidelines, the sentencing court must make any applicable role in offense or acceptance of responsibility adjustments to the defendant's offense level before

---

[3] Subsection (d) addresses the situation where there are multiple counts of conviction and is therefore not relevant here.

making any applicable career offender adjustment under § 4B1.1.  It is this "otherwise applicable" offense level which is then compared with the career offender offense level to determine which should be applied in any particular case.  See Ward, 144 F.3d at 1036 n.7 (noting that "in ascertaining whether the offense level 'otherwise applicable' might be greater than the offense level specified by section 4B1.1 . . . any pertinent Chapter 3 adjustments (including adjustments for the defendant's role in the offense) would be referenced to determine what the 'otherwise applicable' offense level might be.").  As noted above, if the career offender offense level is greater, then it must be applied instead of the "otherwise applicable" level.

Significantly, nothing in the Guidelines suggests, as urged by Mr. Jeppeson, that a role in offense adjustment under § 4B1.2 should be applied *after* a career offender adjustment is made.  In fact, the sequence set forth in § 1B1.1 indicates just the opposite.  See Johnson, 155 F.3d at 683-84 (holding that "[t]he sequence of the Sentencing Guideline Application Instructions . . . indicates that downward adjustments are allowed only for acceptance of responsibility after career offender status is imposed.").  Moreover, the presence of language in § 4B1.1 specifically authorizing the application of an acceptance of responsibility reduction under § 3E1.1 also supports this conclusion.  Had the Sentencing Commission intended for all Chapter Three adjustments to follow a career offender adjustment, there

would have been no need for the Commission to expressly indicate the permissibility of a reduction under § 3E1.1. See Ward, 144 F.3d at 1036 (noting that "[s]ingling out the acceptance of responsibility reduction would, of course, have been unnecessary if all Chapter 3 adjustments could be applied to an offense level specified by section 4B1.1.").

We therefore hold that "[t]he career offender guideline trumps all other offense level adjustments, with the exception of reductions for the acceptance of responsibility." Beltran, 122 F.3d at 1160. Consequently, the district court did not err in refusing to reduce Mr. Jeppeson's offense level under § 3B1.2.

2.    Downward Departure Under § 5K2.0

It is well-settled in this circuit that a court of appeals lacks jurisdiction to review a district court's discretionary refusal to depart from the Sentencing Guidelines. United States v. Castillo, 140 F.3d 874, 887 (10th Cir. 1998); United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999). An exception to this rule exists, however, where the sentencing court "states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." Castillo, 140 F.3d at 887. However, the scope of this exception is narrow. It does not apply where the district court concludes that it lacks authority to depart "*under the defendant's particular circumstances*." Id. (emphasis in original). Moreover, we "treat ambiguous

statements made by district judges as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart." Fortier, 180 F.3d at 1231.

Recognizing this jurisdictional hurdle, Mr. Jeppeson argues that the district court failed to even consider his request for a downward departure under § 5K2.0, and that "[t]he only fair conclusion that can be reached from [this failure] is that the court below believed that it did not have discretion to consider such a downward departure." Aplt. Br. at 20. We disagree.

At his sentencing hearing Mr. Jeppeson argued that his situation fell outside of the "heartland" of the applicable sentencing guidelines due to his "very minimal role in this offense." I R. at 29-30. Accordingly, Mr. Jeppeson requested a downward departure from the applicable guideline range under U.S.S.G. § 5K2.0 on the ground that the Guidelines do not address the situation where a career offender has played a minor or minimal role in the offense of conviction. Id. at 32-34. Refusing to depart on this basis, the district court stated that:

> I realize that [counsel] makes an argument certainly that this matter is not a forbidden area for purposes of a departure. And if the Court was to consider it, it would be an area that frankly is not, as near as I can tell, mentioned specifically within the guidelines, but it is mentioned by statute and mentioned in a guideline that enacts or creates the guideline procedure for the administration of the statutory purpose set forth by Congress. In consequence, I think Mr. Jeppeson must lose or not prevail on his contentions in this case.

I R. at 44.

In light of the foregoing explanation of the district court's decision not to depart, we cannot agree with Mr. Jeppeson that the district court failed to even consider his departure argument. The question remains, however, whether the district court concluded that it could not depart because it lacked authority to depart whenever a career offender seeks a departure based on his role in the offense (in which case we would have jurisdiction), or whether the district court was aware of its authority to depart, but simply concluded that it could not, or should not depart, under the particular circumstances of Mr. Jeppeson's case.

After thoroughly reviewing the transcript from Mr. Jeppeson's sentencing hearing, we conclude that the district court's explanation for its refusal to depart is ambiguous as to exactly what the district court believed regarding its authority to depart from the Guidelines in Mr. Jeppeson's case. In United States v. Rodriguez, 30 F.3d 1318, 1318 (10th Cir. 1994), we stated that:

> [W]e no longer are willing to assume that a judge's ambiguous language means that the judge erroneously concluded that he or she lacked authority to downward depart. . . . Accordingly, *unless the judge's language unambiguously states that the judge does not believe he has authority to downward depart*, we will not review his decision.

Id. at 1319 (emphasis added). Consequently, because the district court did not unambiguously state that it believed it lacked the authority to downward depart, and because, as noted above, we treat ambiguous statements "as though the judge was aware of his or her legal authority to depart but chose instead . . . not to

depart," <u>Fortier</u>, 180 F.3d at 1231, we decline to review the district court's decision not to depart.

Accordingly, we AFFIRM the district court's refusal to grant Mr. Jeppeson a downward offense level adjustment under § 3B1.2 and DISMISS his claim challenging the district court's refusal to grant a downward departure under § 5K2.0.